UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of GORSOAN LIMITED for an
Order Pursuant to 28 U.S.C. § 1782 to Conduct
Discovery for Use in a Foreign Proceeding,

                             *Petitioner*.

No.: 18-mc-431 (RA)

**MEMORANDUM OF LAW IN SUPPORT OF**
**INTERVENOR JANNA BULLOCK'S MOTION TO VACATE EX PARTE ORDER**
**AND QUASH SUBPEONAS ISSUED PURSUANT TO 28 U.S.C. § 1782**

Jonathan P. Bach
Julian S. Brod
Shapiro Arato Bach LLP
500 Fifth Avenue, 40th Floor
New York, New York 10110
(212) 257-4880

*Attorneys for Janna Bullock*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT .................................................................... 1

STATEMENT OF FACTS ............................................................................. 3

    A.   The Russian Federation's Pursuit Of Assets Allegedly Belonging To
Janna Bullock ................................................................................... 3

    B.   The Role of Gorsoan And Gazprombank ............................................ 5

    C.   The Cyprus Action ............................................................................ 7

    D.   Discovery From Bullock In The Prior Section 1782 Proceeding ............. 9

    E.   The Present Section 1782 Proceeding .................................................. 10

    F.   The Subpoenas ................................................................................. 11

ARGUMENT .............................................................................................. 13

I.    Gorsoan Seeks Impermissible Asset Discovery And Has Failed To Show That The
Discovery Sought Is "For Use" In Adjudicative Proceedings In Cyprus ........................ 14

    A.   An Asset Freeze And Disclosure Order Is Not An Adjudicative Proceeding ........ 15

    B.   Gorsoan Seeks Asset Discovery ........................................................ 17

II.   This Court Should Deny Discovery As A Matter Of Discretion ..................................... 19

    A.   The Document Requests Are Overly Broad, Unduly Intrusive, And
Harassing ....................................................................................... 19

    B.   Gorsoan's Section 1782 Application Is Made In Bad Faith ................... 21

    C.   The Third-Party Discovery Sought In This Section 1782 Proceeding Is
An Attempt To Circumvent The Supervision Of The Cyprus Court And
The Federal Rules of Civil Procedure .................................................. 23

III.  The Respondents Have Asserted Their Rights Under The Fifth Amendment ................. 24

CONCLUSION ........................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Brandi-Dorhn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) ................................................................................. 13

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*,
  798 F.3d 113 (2d Cir. 2015) .......................................................................... 13, 15

*Ellis v. City of New York*,
  243 F.R.D. 109 (S.D.N.Y. 2007) ........................................................................ 21

*Esso Exploration & Production Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
  14 Civ. 8445, 2017 WL 3491975 (S.D.N.Y. Aug. 15, 2017) .................................. 24

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995) .............................................................................. 19

*Euromepa, S.A. v. R. Esmerian, Inc.*,
  154 F.3d 24 (2d Cir. 1998) ........................................................................... 15, 16

*Gen. Motors LLC v. Lewis Bros., L.L.C.*,
  10 Civ. 725, 2012 WL 3128949 (W.D.N.Y. July 31, 2012) ................................... 24

*In re Accent Delight Int'l Ltd.*,
  869 F.3d 121 (2d Cir. 2017) ......................................................................... 14, 19

*In re Apotex Inc.*,
  2009 WL 618243 (S.D.N.Y. March 9, 2009) ........................................................ 20

*In re Application of 000 Promnefstroy*,
  2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ....................................................... 20

*In re Application of Postalis*,
  18 Misc. 497, 2018 WL 6725406 (2018) ....................................................... 20, 24

*In re Asia Maritime Pacific, Ltd.*,
  253 F. Supp. 3d 701 (S.D.N.Y. 2015) ................................................................. 17

*In re Elvis Presley Enters. LLC*,
  15 Misc. 386, 2016 WL 843380 (S.D.N.Y. March 1, 2016) ................................... 21

*In re Glitnir banki hf.*,
  08-14757, 2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011) ............................ 21

*In re Letters Rogatory Issued by Director of Inspection of Government of India*,
    385 F.2d 1017 (2d Cir. 1967) ........................................................................ 15

*In re MT Baltic Soul Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*,
    15 Misc. 319, 2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) ........................... 17

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) .................................................................. 13, 14, 19, 23

*Jiangsu Steamship Co., Ltd. v. Success Superior Ltd.*,
    14 Civ. 9997, 2015 WL 3439220 (S.D.N.Y. Jan. 30, 2015) ................. 16, 17, 18

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ....................................................... 13, 14, 15, 20

*Melendez v. Primavera Meats, Inc.*,
    270 F.R.D. 143 (E.D.N.Y. 2010) .................................................................. 21

*Rohland v. Syn-Fuel Assocs.-1982 Ltd. Partnership*,
    89 Civ. 3325, 1990 WL 145015 (S.D.N.Y. Sept. 26, 1990) ........................... 21

*Sequa Corp. v. Gelmin*,
    91 Civ. 8675, 1995 WL 404726 (S.D.N.Y. July 7, 1996) .............................. 24

*Solow v. Conseco, Inc.*,
    06 Civ. 5988, 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008) ........................... 21

**Statutes and Rules**

16 U.S.C. § 6103(a) ................................................................................. 20

28 U.S.C. § 1782 ................................................................................. 1, 13

Fed. R. Civ. P. 26(b)(1) .......................................................................... 20

Fed. R. Civ. P. 45 .................................................................................. 20

**Other Authorities**

Sergei Magnitsky Rule of Law Accountability Act of 2012, Pub. L. No. 112-208,
    126 Stat. 1496, 1504 (2012) ........................................................................ 4

Intervenor Janna Bullock ("Bullock") respectfully submits this memorandum of law in support of her motion to vacate the *ex parte* Order dated October 16, 2018, and to quash the subpoenas from  Petitioner Gorsoan Limited ("Gorsoan") addressed to Bullock's mother, her two daughters, and one of her associates ("Respondents").

## PRELIMINARY STATEMENT

Gorsoan has commenced a proceeding under 28 U.S.C. § 1782 seeking a type of discovery that courts in this jurisdiction have consistently held to be unavailable under that statute:  discovery to ascertain the existence and location of assets that may one day be used to satisfy a judgment.  Unlike the typical Section 1782 petitioner, Gorsoan is not seeking discovery that will aid a foreign trier of fact in adjudicating the merits of any claims or defenses or in adjudicating any disputed issue.  Instead, as it informs the Court in its most recent submission, Gorsoan is seeking "asset discovery."  The law is clear that where, as here, discovery is sought merely to assist in the identification and attachment of assets, Section 1782 does not authorize United States courts to provide assistance.  Rather, Section 1782 applies only when a petitioner seeks discovery "for use" in connection with the adjudication of a foreign dispute.

While the prohibition against using Section 1782 as a means of asset discovery is alone sufficient to require that the pending subpoenas be quashed, several independent grounds support the same result:

*First*, the subpoenas are palpably overbroad.  Far from being narrowly tailored to obtain potentially relevant information, the subpoenas intrude upon the private and confidential financial affairs of third parties, seeking unlimited information about "all" of their assets, expenses, and tax returns.  These requests go well beyond any assets that may be said to belong to Bullock herself.  As but one example, Gorsoan demands that Bullock's younger daughter, a

recent college graduate, produce records of all expenses related to her "social life." Other family members are asked to disclose information about "charitable causes" they support. While the lawsuit in Cyprus concerns an alleged fraud and misappropriation scheme perpetrated between 2005 and 2008, the subpoenas seek records from the present back to August 24, 2012—the effective date of an asset freeze order entered in Cyprus—a clear indication that the requested discovery has nothing to do with the merits of the underlying dispute.

*Second*, the discovery is sought in bad faith. Although Gorsoan purports to be seeking discovery in its own right, it is merely a Cypriot shell corporation that appears to have no business purpose other than to pursue litigation in conjunction with and on behalf of Gazprombank OJSC ("Gazprombank"), a state-controlled Russian bank that is currently subject to U.S. sanctions. Gazprombank, not Gorsoan, is the real party in interest in the Cyprus case, and Gazprombank's interests are closely aligned with those of the Russian government, which, in turn, is seeking to enforce its *own* criminal judgments against Bullock and others by pursuing some of the same assets as Gorsoan. Nothing prevents Gorsoan and Gazprombank from sharing information they obtain about Bullock's mother and daughters with Russian Federation officials to aid their joint quest for assets and Russia's continued prosecution of Bullock's ex-husband, formerly a prominent financier and government official in the Moscow region.

*Third*, these proceedings are an improper attempt to circumvent not only Cyprus's carefully calibrated and limited discovery regime, but also our own Federal Rules of Civil Procedure. In Cyprus, a person from whom discovery is sought must ordinarily be named as a "defendant" in the case so that the court can supervise disclosure. Where discovery is permitted, it is generally limited to the identification and production of material documents for use at trial. Neither depositions nor requests for "all" documents potentially relevant to a particular subject

area are permitted as precursors to an adjudication.  Beyond being impermissible in Cyprus, the discovery sought here clearly violates settled U.S. law.  Courts applying the Federal Rules of Civil Procedure generally do not permit prejudgment discovery for the purpose of attaching assets.

*Fourth*, as more fully set forth in their own submissions, Respondents have asserted their Fifth Amendment right not to be a witness against themselves.  They enjoy analogous rights under Cypriot law.  Section 1782 expressly provides that "a person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."  Respondents should not be compelled to provide testimony or engage in document production that a domestic or foreign prosecutor may view as implicating them in criminal conduct.

## STATEMENT OF FACTS

### A.   The Russian Federation's Pursuit Of Assets Allegedly Belonging To Janna Bullock

This case has its origins in a political dispute in Russia.  Janna Bullock was formerly married to Alexey Kuznetsov, the Minister of Finance and Vice-Governor of the Moscow Region.  Before entering politics, Kuznetsov was one of the most prominent bankers in Russia. He did not enjoy the support of Vladimir Putin and was forced to resign in 2008, when allies of the Kremlin sought his political office as well as his financial holdings and personal property. (Declaration of Jonathan P. Bach, dated July 5, 2019 ("Bach Decl.") Ex. 1.)  As part of the campaign against him, for example, it was publicly alleged that he was secretly a U.S. national with ties to the CIA who had seized $20 billion worth of land near Moscow.  (Bach Decl. Ex. 2.) At or around the time of Kuznetsov's resignation, Bullock, a naturalized United States citizen,

returned to this country, where she has lived since.  Kuznetsov is currently incarcerated in Russia and remains under investigation pending his sentencing.  (Bach Decl. ¶ 16.)

Bullock had no role in Russian government affairs or in her husband's responsibilities as a government official.  Yet she too bore the brunt of the political backlash against him.  In or around 2010, the Russian government began a criminal investigation of her.  (Bach Decl. ¶ 16.) Consistent with Russia's heavy-handed approach to criminal justice, Bullock was convicted in absentia and then sentenced in 2018.  The Russian Federation has used its criminal cases against Bullock and others to pursue her alleged assets and those of her supposed co-conspirators.  This pattern of criminal charges accompanied by the expropriation of the assets of politically disfavored parties is common in Russia.[1]

In France, for example, the Russian government, relying on its criminal case against Bullock and others, has taken steps to seize two major resort hotels in the ski region of Courchevel.  Together, these hotels are worth well in excess of $70 million.  The Russian Federation's first attempt to seize these properties was rejected by a French court.  Its second

---

[1]  *See* Sergei Magnitsky Rule of Law Accountability Act of 2012, Pub. L. No. 112-208, 126 Stat. 1496, 1504 (2012) (describing the wrongful detention, prosecution, and death of Russian lawyer Sergei Magnitsky); Jordan Gans-Morse, *Threats to Property Rights in Russia: From Private Coercion to State Aggression*, 28 Post-Soviet Affairs 263, 278-87 (2012) (describing the rise of the "predatory state" in Russia during the 2000s); Philip P. Pan,*'Raiding' Underlines Russian Legal Dysfunction*, Washington Post, Aug. 13, 2009 ("No crime illustrates the state of the [Russian] legal system better than what is known as 'reiderstvo,' or raiding – the takeover of businesses through court rulings and other ostensibly legal means with the help of crooked judges or police."); Carl Schreck, *The Danger of Doing Business in Russia*, Time Magazine, Dec. 19, 2009, (discussing Magnitsky's wrongful arrest and death; noting that "[the Russian prison] Butyrka is teeming with entrepreneurs locked up on phony charges brought against them in raider attacks").

seizure request is the subject of ongoing proceedings in France.  (Declaration of Vincent Desry,

dated July 3, 2019 ("Desry Decl.") ¶¶ 3-8.)

The Russian Federation cannot readily rely on foreign courts to help it obtain discovery

in aid of asset identification and seizure.  Russia is not a member of the European Union and thus

does not enjoy the reciprocal rights and privileges with respect to judgment recognition and

enforcement enjoyed by member states under European Union regulations.   (*Id.* ¶ 11.)

Moreover, foreign courts have been understandably skeptical of whether Russian judgments are

based on due process.[2]  To overcome these obstacles, the Russian Federation is now using

Gorsoan as a stalkinghorse to lead a global legal campaign against Bullock.

### B.    The Role of Gorsoan And Gazprombank

Gorsoan, a Cyprus limited liability company, is a faceless entity that appears to have no

operations and no business purpose other than to pursue this and similar asset-related litigation in

connection with the same corpus of alleged crimes and frauds allegedly committed in Russia.  It

is unclear who Gorsoan's ultimate beneficial owners are.  (*In re Gorsoan Limited and*

*Gazprombank OJSC*, 13 Misc. 397, ECF No. 4 (Declaration of Alexandros Tsirides, dated

November 26, 2013 ("Tsirides Decl.") ¶ 4) (referring to Gorsoan as a Cypriot limited liability

company and providing no further information).[3]

Gorsoan is allied with and serves as a proxy for Gazprombank, one of the largest banks in

Russia.  Gazprombank is owned by Gazprom, a major energy company whose majority owner is

---

[2]  *See, e.g.,* "European Court Vindicates Aleksei Navalny, Russian Opposition Leader," N.Y. Times, Nov. 15, 2018, available at https://www.nytimes.com/2018/11/15/world/europe/aleksei-navalny-european-court.html (last visited on June 28, 2019).

[3] The Tsirides Declaration was filed in support of Gorsoan and Gazprombank's 2013 application for Section 1782 discovery and is incorporated by reference in support of Gorsoan's current Section 1782 application.  (ECF No. 4, at 2, n.2.)

the Russian Federation (through the Federal Agency for State Property Management). (Declaration of Achilleas Demetriades, dated July 2, 2019 ("Demetriades Decl.") ¶ 4.)  Indeed, Gorsoan was formed in March 2010 for the purpose of accepting an assignment one month later of Gazprombank's interest in certain Russian bonds that underly the claims against Bullock and her ex-husband.  (Bach Decl. Ex. 3; Tsirides Decl. ¶ 25.)  A second assignment or addendum was made in July 2012 to shore up the relationship between Gazprombank and Gorsoan in anticipation of the commencement of legal proceedings in Cyprus in August 2012.  (Tsirides Decl. ¶ 25.)  As a Cypriot entity, Gorsoan, unlike Gazprombank, can avail itself of Cypriot courts and take discovery through the courts of other EU member nations.  And it can do this while posturing itself as having interests distinct from those of the Russian Federation.

It is only by this corporate and political legerdemain that a case involving alleged Russian perpetrators and alleged Russian victims, based on an alleged fraud committed through a Russian bond offering, found its way to a Cyprus court.  Were that not enough, Gorsoan now uses the Cypriot proceeding as a springboard to petition a United States court to help it obtain discovery on behalf of Gazprombank, the real party in interest.  Despite its purported assignments to Gorsoan, Gazprombank remains a party plaintiff in the Cyprus case.  When the defendants in Cyprus sought to dismiss Gazprombank from the Cyprus proceeding on the ground that it claimed to have assigned all of its rights to Gorsoan, Gazprombank successfully opposed the application.  (Demetriades Decl. ¶¶ 6-8.)  Because Gazprombank has always been and remains a named party-plaintiff in Cyprus, it should be presumed that it has retained certain rights and interests, despite the purported assignments.

Gorsoan takes great pains to distinguish itself from Gazprombank (Memorandum of Law in Support of Gorsoan's Ex Parte Application, ECF No. 2 ("Memorandum") at 1, n.1)

6

(explaining that Gazprombank is not a party herein), and for obvious reasons:  Gazprombank is among several key Russian entities subject to U.S. sanctions and thus might well be wary of asking a U.S. court to exercise its discretion to assist a politically-charged vendetta.  (Bach Decl. Ex. 4.)  While Gazprombank is not named as a petitioner herein, its behind-the-scenes role is transparent:  The initial application for an order authorizing issuance of the same subpoenas, rejected by then District Judge Richard J. Sullivan, was made jointly by Gorsoan and Gazprombank.  (ECF Nos. 51-54 in 17 Civ. 5912.)  Before Gazprombank was subject to sanctions, it joined Gorsoan in filing a prior Section 1782 request in this Court for documents and information from Bullock.  (*In re Gorsoan Limited and Gazprombank OJSC*, 13 Misc. 397, ECF No. 1.)  And, although the pleadings in the current matter identify only Gorsoan as the petitioner, the subpoenas have been issued in the names of "Gorsoan Limited and Gazprombank OJSC."  (Bach Decl. Exs. 5-8.)  Tellingly, the attorney who issued the subpoenas is listed as counsel for both the Cypriot and the Russian entity.  (*Id.*)

### C.    The Cyprus Action

In August 2012, Gorsoan and Gazprombank commenced an action in the District Court of Limassol by filing a Writ identifying themselves as joint plaintiffs.  (Tsirides Decl. ¶¶ 5, 6.) Based on an affidavit provided by an employee of Gazprombank, they sought orders calling for the freezing and disclosure of assets by thirty named defendants, including numerous defendants with no substantive liability who were named, in accordance with Cyprus law, for purposes of discovery.  (*Id.* ¶ 11.)  On August 14, 2012, the Cyprus court entered a preliminary order freezing Bullock's worldwide assets, with an effective date of August 24, 2012.  (*Id.* ¶ 14.)  The Cyprus court confirmed this asset freezing order on March 6, 2013, and in service of the asset freeze order required Bullock to disclose her worldwide assets in excess of 10,000 Euros

("Freezing and Disclosure Order").  (Tsirides Decl. at ¶ 30.)  Copies of these orders, as translated

by Gorsoan, are attached hereto.  (Bach Decl. Exs. 9, 10.)

By its terms, the March 2013 Freezing and Disclosure Order (1) requires the first 15

defendants named in the Cyprus action, including Bullock, to freeze assets anywhere in the

world up to the amount of approximately $26 million, (2) directs the same defendants to disclose

the existence of all their assets worth more than 10,000 Euros, and (3) directs the remaining

defendants to disclose information and produce documents relating to the first 15 defendants.

(Bach Decl., Ex. 10.)  As such, it expressly identifies the parties from whom such discovery can

be sought.  Among those named, "Defendants (16) to (30) have been included for the purpose of

obtaining third-party discovery, known in Cyprus (and in the United Kingdom) as *Norwich*

*Pharmacal* relief," and no damages against them are sought.  (Tsirides Decl. at ¶¶ 6, 10.)  The

Freezing and Disclosure Order does not authorize any discovery beyond its prescribed terms.

Nor does it provide for adversarial questioning in the form of a deposition.  Rather, it calls for

written affidavits with documentary attachments.  (Bach Decl., Ex. 10.)

After obtaining the Freezing and Disclosure Order, Gorsoan and Gazprombank filed their

Statement of Claim on December 19, 2013, the equivalent of a civil complaint in the United

States.  (Demetriades Decl. ¶ 11(f).)  It alleges, in sum and substance, that three Russian

municipal entities sold bonds based on false representation and that defendants misappropriated

the proceeds.  (Tsiridis Decl. ¶¶ 18-24.)  Gazprombank allegedly invested in the bonds "between

2005 and 2007," and the defendants allegedly misappropriated and diverted the invested funds

"between 2006 and 2008."  (*Id.* ¶¶ 20, 23.)

Gazprombank was but one of many investors in the bond offering and purchased no more

than a fraction of the bonds.  (*Id.* ¶ 20.)  Yet it appears that no other alleged victim has stepped

forward in a Cypriot court or requested assistance in the United States to rectify this alleged

wrong.  Only a major Russian bank, backed by the Russian government, which has already

obtained its own criminal judgment against Bullock and is currently seeking assets to satisfy that

judgment, has chosen this circuitous route.

Over the past seven years, the case pending in Cyprus has functioned as little more than a

vehicle for asset discovery.  There has been no hearing or adjudication on the merits, nor has a

date for one been set.  (Demetriades Decl. ¶ 11(o)(iv).)  Gorsoan and Gazprombank, as if still at

the preliminary stages of the proceeding, recently added a new party defendant in an effort to

identify and freeze more assets, a tactic that will further delay the adjudication of their claims.

(*Id.* ¶ 11(n).)

### D.    Discovery From Bullock In The Prior Section 1782 Proceeding

In 2013, Gorsoan and Gazprombank commenced a Section 1782 proceeding in this Court

against Bullock and others seeking testimony and documents.  In response to the subpoena

addressed to her, Bullock's then counsel, Sher Tremonte LLP, performed a diligent search and

produced nearly 10,000 pages of documents.  (Bach Decl. ¶ 12.)  Although Bullock was found to

be in contempt based on one of her answers to a deposition question, no such finding has been

made with respect to her production of documents, and the matter remains pending.   (*Id.* ¶ 13.)

Bullock's extensive document production is contrary to Gorsoan's statement to this Court that

Bullock "has provided minimal discovery."  (Letter of Caroline Donovan, dated May 13, 2019,

ECF No. 15 ("Donovan Letter") at 1.)

In addition to producing numerous documents, Bullock sat for deposition twice.  Gorsoan

terminated the first deposition after several hours of questioning, claiming that her answers were

evasive and unacceptable.  During her second deposition, represented by new counsel, Bullock

invoked her Fifth Amendment right in response to hundreds of detailed questions posed by

Gorsoan and Gazprombank's counsel.  (Bach Decl. ¶ 14.)  As a result, Gazprombank and Gorsoan now have the benefit of an adverse inference or any other evidentiary advantage Cyprus courts may allow when an adversary refuses to answer questions.

The questions that counsel for Gorsoan and Gazprombank posed at both depositions concerned principally, if not exclusively, the details and ownership of assets, including, among others, the two hotels in Courchevel, France, as well as Bullock's compliance with the Cyprus Freezing and Disclosure Order.  This underscores once again that Gorsoan and Gazprombank have been seeking asset discovery rather than evidence in support of their claims.

### E.    The Present Section 1782 Proceeding

Having pursued discovery from Bullock, Gorsoan now seeks documents and testimony from Bullock's mother, her two daughters, and one of her associates.  None is a party to the matter in Cyprus, and none has been named in the Cyprus Freezing and Disclosure Order as a third party from whom discovery can be sought.  In its submission in support of its subpoenas, Gorsoan nowhere suggests that any of these individuals is aware of the alleged fraud described in the Statement of Claim or could assist a Cyprus tribunal in adjudicating the merits of any claim or defense.  Tellingly, Bullock's daughters were age 9 and age 17 when the bond fraud allegedly began.

On December 17, 2018, Respondents objected to the subpoenas as failing to satisfy the requirements of Section 1782 and invoked their Fifth Amendment right not to be witnesses against themselves.  Gorsoan did not pursue the matter for nearly six months.  It was only on May 13, 2019, when it received a query from the Court's staff about the status of what appeared to be an inactive matter, that Gorsoan decided to resume its efforts and filed a letter brief moving to compel further responses.  (Letter of Sean Hecker, dated May 16, 2019, ECF No. 16; Donovan Letter, ECF No. 15.)

In the time that has elapsed since it submitted its prior Section 1782 request, Gorsoan has

taken measures to seize assets worth well in excess of the approximately $26 million limit

provided for in the Cyprus Freezing and Disclosure Order.  Specifically, it has registered interim

judicial mortgages on hotel properties in Courchevel, including "Crystal," estimated in 2013 to

have a value of 45,960,000 Euros, and "Pralong," estimated in 2014 to have a value of

approximately 16,900,000 Euros.  It has also registered an interim judicial security on the

tangible and intangible assets of the ongoing business of Pralong, worth approximately

7,000,000 Euros.  (Desry Decl. ¶ 16 & Exs. 1-5.)  In short, Gorsoan currently holds security

interests worth nearly 70,000,000 Euros.[4]

By Order dated May 31, 2019, and with the consent of all parties, this Court granted

Bullock's motion to intervene in these proceedings.  (ECF No. 22.)  The subpoenas at issue and

the arguments presented herein are different from those presented to the District Court and

Second Circuit when they considered Gorsoan and Gazprombank's prior Section 1782 request to

Bullock and others.

### F.    The Subpoenas

Gorsoan has addressed separate subpoenas to Zoya Kuznetsova (Bullock's mother), Zoe

Bullock Remmel (Bullock's older daughter), Eugenia Bullock (Bullock's younger daughter), and

Stuart Sundlun (one of Bullock's associates).  Each tracks the language and relevant dates of the

Cyprus Freezing and Disclosure Order.  As the Freezing and Disclosure Order initially went into

effect on August 24, 2012, so, too, the subpoenas each provide that the "relevant time period for

---

[4] It is also worth noting that the ruble has lost close to two-thirds of its value against the dollar
since 2007.  Thus, Gazprombank's alleged investment of approximately $23,000,000 between
2005 and 2007 is worth approximately $8,000,000 today.  In that sense, the approximately $26
million ceiling of the Cyprus Freezing and Disclosure Order might well exceed the amount
necessary to secure any eventual judgment.

these Requests is August 24, 2012 to present."  Similarly, as the Freezing and Disclosure Order requires the disclosure of assets "exceeding 10,000 Euros," so, too, the subpoenas define "Asset" as "anything of economic value exceeding 10,000 Euros."  (Bach Decl. Exs. 5-8.)

In seeking private financial information from third parties, the subpoenas are staggeringly broad.  The subpoena directed to Bullock's mother requires production of "[a]ll documents concerning your Assets," "[a]ll documents concerning [your] federal and local taxes," "[a]ll documents concerning your expenses and sources of payment(s) for those expenses, including without limitation, costs in connection with any of your Assets," "[a]ll documents concerning any business you have entered into," "[a]ll documents concerning all instances in which you have provided cash or any other Asset to Bullock," "[a]ll documents concerning charitable causes you support," and "[a]ll documents concerning any Assets Transferred from or to Bullock."  (Bach Decl. Ex. 5.)

The subpoena addressed to Bullock's older daughter goes even farther.  In addition to seeking the same categories of documents noted above, it seeks information concerning her husband, her own children, and her own private business "Zaya Food" – matters that obviously have nothing to do with any disputed issue in Cyprus.  (Bach Decl. Ex. 6 (seeking, e.g., "All documents concerning your expenses and sources of payment(s) for those expenses, including without limitation, costs in connection with any of your Assets, your Husband's Assets, or your Children's Assets").)

The subpoena directed to Bullock's younger daughter, who graduated from college last month, covers the same basic categories and further seeks "[a]ll documents concerning charitable causes you support, including events you have attended, not limited to the Viennese Opera Ball

of February 2, 2018, and/or donations you have contributed."  It even demands that she produce

all documents concerning expenses related to her "social life."  (Bach Decl. Ex. 7.)

The subpoena addressed to Bullock's associate Stuart Sundlun seeks "[a]ll documents

concerning Bullock, including without limitation any communications with Bullock," regardless

of subject matter.  It also seeks, among other things, information related to the hotels in

Courcheval, France, that Gorsoan and the Russian Federation are currently attempting to seize

through various legal means.  (Bach Decl. Ex. 8.)

## ARGUMENT

Under Section 1782(a), a district court has authority to grant an application for discovery

in aid of foreign proceedings only where "(1) the person from whom discovery is sought resides

(or is found) in the district of the district court to which the application is made, (2) the discovery

is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the

application is made by a foreign or international tribunal or any interested person."  *Mees v.*

*Buiter*, 793 F.3d 291, 297 (2d Cir. 2015); *Brandi-Dorhn v. IKB Deutsche Industriebank AG*, 673

F.3d 76, 80 (2d Cir. 2012).  The party petitioning for Section 1782(a) discovery bears the burden

of demonstrating the presence of each of the statutory elements.  *See Certain Funds, Accounts*

*and/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 122 n.11 (2d Cir. 2015).

Satisfaction of the three statutory requirements is merely the first threshold a petitioner

must overcome when seeking discovery under Section 1782.  Even where the statutory

requirements have been met, district courts exercise discretion in determining whether, and to

what extent, discovery is appropriate.  In short, compliance with the statutory requirements

"authorizes, but does not require" the district court to permit discovery.  *Intel Corp. v. Advanced*

*Micro Devices, Inc.*, 542 U.S. 241, 255 (2004); *id.* at 264 ("As earlier emphasized … a district

court is not required to grant a [Section] 1782(a) discovery application simply because it has the authority to do so.").

To guide the district court's discretion, the Supreme Court has identified four factors—known as the *Intel* factors—that "bear consideration":  "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for [Section] 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the [Section] 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly burdensome.'"  *Mees*, 793 F.3d at 298 (quoting *Intel*, 542 U.S. at 264-65).  As the Second Circuit has observed, Congress broadly delegated discretion to grant, deny, or tailor discovery under Section 1782(a) to the district court, and thus "the role of the district courts as gatekeepers [for Section 1782(a) discovery] is paramount."  *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 134 (2d Cir. 2017).

As shown below, Gorsoan cannot meet its burden of showing that the statutory requirements have been satisfied, and—although the Court need not reach the issue—the *Intel* factors strongly favor denial of discovery.

## I.  Gorsoan Seeks Impermissible Asset Discovery And Has Failed To Show That The Discovery Sought Is "For Use" In Adjudicative Proceedings In Cyprus

Gorsoan has failed to satisfy the second of the three statutory prerequisites for Section 1782 discovery—namely, that the requested discovery be "for use" in a foreign proceeding.  In its submissions, Gorsoan argues that it should be entitled to obtain "asset discovery" pursuant to the Cyprus court's Freezing and Disclosure Order.  (Donovan Letter at 1; Memorandum at 2.)

14

However, Section 1782 discovery is only available in aid of "adjudicative" proceedings before a foreign tribunal. Asset freeze orders, like orders of attachment, or post-judgment enforcement mechanisms, are not adjudicative proceedings. Put more broadly, asset discovery for the purpose of identifying and securing assets, as opposed to merits discovery, is not permitted under Section 1782.

### A.   An Asset Freeze And Disclosure Order Is Not An Adjudicative Proceeding

The Second Circuit has long held that discovery under Section 1782 is only "for use in a proceeding before a foreign tribunal" when the "foreign proceeding is adjudicative in nature" and the discovery sought will help move the needle on the merits of the foreign dispute. *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998); *see In re Letters Rogatory Issued by Director of Inspection of Government of India*, 385 F.2d 1017, 1020-21 (2d Cir. 1967) (Friendly, J.). "Under [Section] 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success." *Mees*, 793 F.3d at 299 (explaining that "seeking discovery to prove one's claim" in a pending proceeding "satisfies the 'for use' requirement"). A foreign litigant may not, however, use Section 1782 "[w]ithout some means of injecting *the evidence* into the proceeding … such that it may 'use' the information." *Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015) (emphasis added); *see also id.* at 122 n.11 ("[T]he burden [is] on a § 1782 applicant to establish that it will have some means of actually using the evidence in the foreign proceeding.").

In *Euromepa*, the Second Circuit considered whether a French bankruptcy proceeding through which the Section 1782 petitioner sought to enforce a previously obtained judgment was an adjudicative proceeding that could serve as a predicate for Section 1782 discovery. 154 F.3d at 28. The Second Circuit held that the bankruptcy proceeding was not adjudicative because it

15

was merely a vehicle through which an "already extant judgment [was] being enforced." *Id.*
The "merits of the dispute … ha[d] already been adjudicated" and would not be revisited in the
bankruptcy. *Id.* The Second Circuit therefore denied Section 1782 discovery. *Id.* at 29.

Following *Euromepa*, Courts within this Circuit have held that Section 1782 bars
discovery in aid of asset identification or collection, as opposed to discovery in aid of the merits
of a claim or defense subject to adjudication. This is true regardless of whether the discovery is
sought after or, as here, before entry of a foreign judgment, and regardless of whether the asset
discovery is sought ancillary to an actually pending foreign adjudicative proceeding.

In *Jiangsu Steamship Co., Ltd. v. Success Superior Ltd.*, 14 Civ. 9997, 2015 WL 3439220
(S.D.N.Y. Jan. 30, 2015), Judge McMahon addressed a Section 1782 application seeking
discovery from U.S. banks in aid of a breach of contract claim to be brought in a London
arbitration. The petitioner did not argue that Section 1782 discovery would assist in proving its
claim. Instead, it argued that it should be permitted discovery to identify assets that could then
be attached as security for an eventual arbitral award. Noting that "[a] United States court must
be particularly cautious to insure that [Section] 1782 is not being invoked as a subterfuge, to
mask some extra-statutory purpose," Judge McMahon had little difficulty in finding that Section
1782 did not authorize the requested prejudgment asset discovery:

> [Petitioner] does not seek this discovery in order to help decide the 'merits
> of the dispute' between it and [respondent]; it wants the information about
> [respondents'] assets so it can easily obtain advance security for such a
> judgment … or enforce whatever judgment it might obtain in the as-yet-
> to-be-brought London arbitration. *However, neither pre-judgment
> attachment nor post-judgment enforcement proceedings are 'adjudicative'
> in nature… the request for this particular form of discovery should be
> denied.*

*Id.* at *4 (emphasis added) and at *6 ("There is nothing remotely adjudicative about a pre-
judgment attachment proceeding. It is a means of obtaining security for a judgment that has not

16

been obtained and that may never be obtained.").  Judge McMahon subsequently denied

petitioner's motion for reconsideration, reiterating that, in a pre-judgment attachment

proceeding, "nothing is 'adjudicated,'" because "[a]ll that happens is that identified property

becomes security for the enforcement of a judgment that may be entered somewhere down the

pike."  2015 WL 518567, at *3 (S.D.N.Y. Feb. 5, 2015).

Similarly, in *In re Asia Maritime Pacific, Ltd.*, 253 F. Supp. 3d 701 (S.D.N.Y. 2015),

Judge Caproni denied a Section 1782 application seeking discovery to identify assets "to attach

as security" for an eventual judgment on a claim in a pending London arbitration.  *Id.* at 706-07.

"Inasmuch as the arbitration proceeding is for … failure to pay the amounts due under [an

agreement]," Judge Caproni explained, "it is not intuitively obvious  . . . [that] the location of

[the respondent's] assets would be relevant or would increase Petitioner's chance of success in

that proceeding."  *Id.* at 707.

Finally, in *In re MT Baltic Soul Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*,

15 Misc. 319, 2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015), the petitioner sought Section 1782

discovery to locate assets for enforcement of a judgment obtained in English courts.  Judge

Swain denied the petition, finding that "[a]ny discovery … would only be in relation to a

contemplated post-judgment action, which *Euromepa* holds is not a 'foreign proceeding' within

the meaning of [S]ection 1782."  *Id.* at *2.

These cases make clear that Section 1782 discovery is not allowed if its purpose is solely

to discover assets for pre-judgment attachment or in anticipation of post-judgment enforcement.

### B.    Gorsoan Seeks Asset Discovery

Applying these standards, it is clear that the subpoenas should be quashed.  There is no

serious dispute that Gorsoan is seeking asset discovery in aid of the Cyprus Court's Freezing and

Disclosure Order.  Although Gorsoan pays lip service to the notion that it seeks evidence

17

"concerning both the underlying fraud and Bullock's assets" (Memorandum at 2), it does not explain how any of its document requests concern that "underlying fraud." To the contrary, as is evident from the face of the subpoenas, the discovery demands relate only to Bullock's and Respondents' alleged assets. Moreover, the subpoenas are limited to the period following the August 24, 2012 effective date of the first Cyprus freezing order—even though the period of the alleged fraud was between 2005 and 2008. Simply put, Gorsoan's sole purpose is to identify assets that may be subject to the Freezing and Disclosure Order and that could one day be used to satisfy a Cyprus judgment "that may be entered somewhere down the pike." *Jaingsu Steamship*, 2015 WL 518567, at *3. This is not a permissible basis for discovery under Section 1782.

In its most recent letter to this Court, Gorsoan concedes that it has been "seeking asset discovery." (Donovan Letter at 1.) As characterized by Gorsoan, the current subpoenas to family members seek "information concerning transfers of assets to them by or through Bullock, their own assets and expenses, and any transfers or related movement of their assets." (Memorandum at 10.) As to Sundlun, Gorsoan claims to seek "discovery regarding Bullock's assets." (*Id.*) Moreover, the subpoenas only call for documents concerning assets that exceed the Freezing and Disclosure Order's 10,000 Euro minimum threshold.

Focusing merely on assets, Gorsoan nowhere alleges that Bullock's mother or daughters could shed light on the merits of any claim or defense pending in Cyprus. Gorsoan does not say how "Zaya Food," a small business associated with Bullock's older daughter, is conceivably relevant to fraud claims arising from an alleged Russian municipal bond scheme that, according to Gorsoan, took place more than a decade ago. Nor does Gorsoan explain how expenses relating to Bullock's younger daughter's "social life," or her alleged attendance at the Viennese

Opera Ball in 2018, will help it prove its case in Cyprus. Just to state these requests is to recognize how absurd they are.

Gorsoan claims to be pursing its present Section 1782 request only because Bullock herself allegedly provided insufficient responses in a prior Section 1782 proceeding, including when her own deposition was taken twice. (Memorandum at 5; Donovan Letter at 2.) The record is clear that, during her second deposition, Bullock invoked her Fifth Amendment right in response to hundreds of detailed questions, while Gorsoan freely questioned her at length. If Gorsoan were seeking merits discovery, it would need to proceed no further: it has the benefit of adverse inferences or of any other evidentiary advantage Cyprus courts may grant in such circumstances. Gorsoan now seeks discovery from third parties only to aid its search for assets.

Because the discovery sought is not "for use" in a foreign proceeding within the meaning of Section 1782, the subpoenas should be quashed. The Court's analysis need go no further.

## II.    This Court Should Deny Discovery As A Matter Of Discretion

### A.    The Document Requests Are Overly Broad, Unduly Intrusive, And Harassing

Even assuming that Gorsoan can meet the basic elements of Section 1782, the subpoenas should nonetheless be quashed as a matter of the Court's discretion. District courts are the "gatekeepers" of Section 1782 discovery, *Accent Delight*, 869 F.3d. at 134, and have broad discretion to quash "unduly intrusive or burdensome" discovery requests under Section 1782. *Intel*, 542 U.S. at 245. As the Second Circuit has explained, "if the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto[.]" *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995). District courts have not hesitated to exercise this authority, especially where, as here, discovery is sought from non-parties. *See, e.g., In re Apotex Inc.*, 2009 WL 618243, at *3-4

19

(S.D.N.Y. March 9, 2009) (quashing subpoena that would require a non-party to perform "onerous searches"); *In re Application of 000 Promnefstroy*, 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009) (denying request for broad Section 1782 discovery from non-party and noting that "cases in which such applications were routinely approved" typically involve requests for "a single document or report, or even those documents relating to a single transaction or event").

This is a case in point. Gorsoan's subpoenas contain exceedingly broad document requests that would never pass muster under our procedural rules. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 45(d)(3)(iv); *Mees*, 793 F.3d at 302 ("[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar stands of Rule 26 of the Federal Rules of Civil Procedure."); *In re Postalis*, 18 Misc. 497, 2018 WL 6725406, at *6 (S.D.N.Y. Dec. 20, 2018) (denying Section 1782 application where subpoena was "plainly overbroad"). The subpoenas are broad in scope, going so far as to investigate "charitable contributions" and expenses related to "social life" in addition to numerous other generally private and confidential financial matters. Even assuming that the document requests were somehow relevant to an adjudication in Cyprus, they are so vague and overbroad, both as to scope and time, that it is impossible to know how to respond to them. How should a witness respond to a demand for "all documents concerning your assets," or "all documents concerning any business you have entered into"? Even construed in the narrowest manner possible, the subpoenas would impose an undue burden on Respondents entirely disproportionate to the needs of the Cyprus proceedings.

Were that not enough, the subpoenas improperly call for highly personal and sensitive information. The subpoenas directed to Bullock's family seek all of their federal and local tax documents from 2012 to the present. Tax returns, of course, are "confidential," 16 U.S.C. §

20

6103(a), and "'[c]ourts have been reluctant to require disclosure of tax returns because of both 'the private nature of the sensitive information contained therein' and 'the public interest in encouraging the filing by taxpayers of complete and accurate returns.'" *Ellis v. City of New York*, 243 F.R.D. 109, 111 (S.D.N.Y. 2007) (citations omitted).  Tax returns are thus protected by a "quasi-privilege" overcome only where the demanding party has shown a compelling need for the information, and that the information cannot be obtained from other sources.  *See id.* at 112; *Rohland v. Syn-Fuel Assocs.-1982 Ltd. Partnership*, 89 Civ. 3325, 1990 WL 145015, at *1 (S.D.N.Y. Sept. 26, 1990); *Melendez v. Primavera Meats, Inc.*, 270 F.R.D. 143, 144 (E.D.N.Y. 2010).  Gorsoan makes neither showing here.

For similar reasons, courts are reluctant to allow discovery of confidential financial information from non-parties.  *See Solow v. Conseco, Inc.*, 06 Civ. 5988, 2008 WL 190340, at (S.D.N.Y. Jan. 18, 2008) (quashing subpoenas seeking non-party's confidential financial information); *In re Glitnir banki hf.*, 08-14757, 2011 WL 3652764, at *5-8 (Bankr. S.D.N.Y. Aug. 19, 2011).

Gorsoan has shown no reason why the intrusive third-party discovery that it seeks here should be permitted. The subpoenas are overly broad and harassing and should be quashed in their entirety.  *See In re Elvis Presley Enters. LLC*, 15 Misc. 386, 2016 WL 843380, at *6 (S.D.N.Y. March 1, 2016) (declining to narrow overly broad subpoena and denying Section 1782 application).

### B.    Gorsoan's Section 1782 Application Is Made In Bad Faith

Gorsoan's subpoenas should also be quashed because Gorsoan has brought its Section 1782 application in bad faith.  Apart from violating the statute by seeking information and materials unrelated to the merits of the Cyprus case, it appears that Gorsoan has a far more nefarious purpose in seeking extensive, asset-related discovery:  to obtain information about

Bullock, her family, and her alleged assets that it can then turn over to the Russian Federation to aid in its years-long campaign to seize Bullock's assets and to bolster its politically-driven criminal case against her ex-husband.

As shown above, Gazprombank is using Gorsoan as a litigation front because Gazprombank cannot easily avail itself of EU or American discovery processes. This type of collaboration is to be expected given that Gorsoan has no independent purpose of its own and was created solely for the purpose of accepting assignments from Gazprombank and then pursuing this litigation. Also certain is the close connection between Gorsoan and Gazprombank's civil actions, on the one hand, and the criminal proceedings and related enforcement proceedings brought against Bullock and her co-defendants by the Russian state. Gorsoan and the Russian Federation are both currently pursuing legal claims for certain property in France, including the rights to two Courcheval hotels. Gorsoan's intrusive and harassing subpoenas to Bullock's mother, her two daughters, and one of her associates are clearly designed to put pressure on Bullock while Gorsoan and Gazprombank, along with the Russian Federation, are attempting to seize and obtain assets through contested litigation not only in Cyprus, but also in France.  This Court should not facilitate such tactics.

Moreover, the Cyprus action, claimed to be the basis for the current Section 1782 request, was commenced nearly seven years ago, in 2012, but neither Gorsoan nor Gazprombank has made any significant effort to move it toward a hearing on the merits. It is being used merely as a convenient vehicle for the initiation of overseas asset discovery and related enforcement proceedings. While Gorsoan purports to require discovery from the subpoenaed parties, it should be noted that Bullock herself, following a diligent search by her then counsel, already produced nearly 10,000 pages of documents to Gorsoan and Gazprombank in the earlier Section

1782 proceeding, and Gorsoan has already identified and registered claims for assets with a total value that far exceeds the amount of damages Gorsoan and Gazprombank are claiming in Cyprus.  (Desry Decl. ¶ 16.)

      **C.**    **The Third-Party Discovery Sought In This Section 1782 Proceeding Is An Attempt To Circumvent The Supervision Of The Cyprus Court And The Federal Rules of Civil Procedure**

Section 1782 applications should be denied where the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 241.  Here, the exceedingly broad prejudgment third-party "asset discovery" that Gorsoan seeks would not be available either in Cyprus or under our own Federal Rules of Civil Procedure.  Thus, this factor strongly favors denying discovery.

First, the broad third-party asset discovery that Gorsoan seeks should be denied because it is an attempt to circumvent Cyprus's carefully calibrated and limited system of civil discovery. In Cyprus, parties from whom discovery is sought generally must be named as defendants in the action and brought before the court, even if no claims are asserted against them.  What we consider "third-party discovery" may then be pursued against such named defendants.  The purpose of the Cyprus system is to permit the court to supervise the scope and manner of discovery procedures that are typically much more limited than their U.S. analogues.  Among other things, Cyprus does not permit the use of depositions, and document discovery is generally limited to the identification of material documents that a party will use to prove its case at trial. (Demetriades Decl. ¶¶ 11(k), 15.)

Gorsoan and its counsel are familiar with these procedures.  Indeed, Gorsoan named numerous foreign parties as defendants in the Cypriot proceedings for discovery purposes only. Nonetheless, in a transparent effort to avoid Cyprus's limited discovery and tight judicial

controls over the process, Gorsoan turns to this Court to obtain far greater, and more intrusive, information.

Gorsoan also seeks to circumvent policies and limitations embodied in our Federal Rules of Civil Procedure.  "Section 1782 incorporates the Federal Rules of Civil Procedure by reference," and courts addressing Section 1782 requests have been loath to depart from the norms of the American legal system.  *In re Application of Postalis*, 2018 WL 6725406, at *6 (2018) (denying request for pre-action discovery because "[t]he American legal system does not permit pre-action discovery" and to allow such discovery would "circumvent the laws and policies of the United States embodied in the Federal Rules of Civil Procedure").

Absent exceptional circumstances, under the Federal Rules "discovery concerning an adversary party's assets is not permitted during the course of the litigation unless it is relevant to the merits of a claim."  *Esso Exploration & Production Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 14 Civ. 8445, 2017 WL 3491975, at *4 (S.D.N.Y. Aug. 15, 2017) (quoting *Sequa Corp. v. Gelmin*, 91 Civ. 8675, 1995 WL 404726, at *6 (S.D.N.Y. July 7, 1996)); *Gen. Motors LLC v. Lewis Bros., L.L.C.*, 10 Civ. 725, 2012 WL 3128949, at *8 (W.D.N.Y. July 31, 2012) ("Discovery of an adverse party's assets and financial information generally is not permitted during the course of litigation unless such discovery involves the specific elements of a claim at issue in the case.").  Thus, even if Gorsoan's end-run around Cypriot restraints on discovery were deemed permissible, Gorsoan would still be prohibited from obtaining the discovery it seeks under fundamental principles of U.S. law.

## III.   The Respondents Have Asserted Their Rights Under The Fifth Amendment

As set forth in their own separate submissions, Respondents have asserted their Fifth Amendment right not to be witnesses against themselves.  They enjoy analogous rights under Cypriot law.  (Demetriades Decl. ¶ 17.).  Section 1782 expressly provides that "[a] person may

not be compelled to give his testimony or statement or to produce a document or thing in violation of any legally applicable privilege." For this reason alone, and even assuming Gorsoan has satisfied all other requirements of Section 1782, Gorsoan should not be permitted to pursue its requests any further.

## CONCLUSION

For the foregoing reasons, Intervenor Bullock respectfully requests that this Court grant her motion, vacate the *ex parte* Order dated October 16, 2018, and quash the subpoenas issued to the Respondents herein.

Dated: July 5, 2019
        New York, New York


                                            /s/ Jonathan P. Bach
                                            Jonathan P. Bach
                                            Julian S. Brod
                                            Shapiro Arato Bach LLP
                                            500 Fifth Avenue, 40th Floor
                                            New York, New York 10110
                                            (212) 257-4880
                                            jbach@shapiroarato.com

                                            *Attorneys for Janna Bullock*