UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/24/20

In re Application of GORSOAN LIMITED
for an Order Pursuant to 28 U.S.C. § 1782 to
Conduct Discovery for Use in a Foreign
Proceeding,

                 *Petitioner.*

No. 18-MC-431 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

On October 15, 2018, Judge Sullivan, to whom this matter was previously

assigned, issued an *ex parte* order granting discovery to Petitioner Gorsoan Limited

pursuant to 28 U.S.C. § 1782 and authorizing subpoenas to be served on Respondents

Zoe Bullock Remmel ("Bullock Remmel"), Eugenia Bullock ("E. Bullock"), Zoya

Kuznetsova, and Stuart Sundlun (collectively, "Respondents"). On May 13, 2019,

Gorsoan filed a motion to compel Respondents to respond to those subpoenas.

Respondents oppose Gorsoan's motion on several grounds. Also currently before the

Court is intervenor Janna Bullock's ("Bullock") motion to vacate the October 2018

discovery order and quash the subpoenas served on Respondents. For the reasons stated

below, the Court grants Gorsoan's motion to compel, but refers this action to a magistrate

judge to modify the scope of discovery. Bullock's motion is denied.

## BACKGROUND

### I.    Relevant History

This matter has a long and complicated history, with which the Court assumes the

parties' familiarity. *See Gorsoan Ltd. v. Bullock*, 652 F. App'x 7 (2d Cir. 2016); *In re*

*Application of Gorsoan Ltd. & Gazprombank OJSC*, No. 13-mc-397 (PGG), 2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014). The Court briefly addresses only what is relevant to the two motions now before it.

Gorsoan, a Cyprus limited liability company, and Gazprombank, a Russian bank, filed a civil suit against thirty defendants, including intervenor Bullock, in the District Court of Limassol in 2012 (the "Cyprus action"). Gorsoan alleged that Bullock and the other defendants engaged in fraud resulting in approximately $25 million in damages to Gorsoan. As part of that litigation, the Cyprus court issued an order, freezing assets exceeding the value of €10,000 anywhere in the world belonging to certain defendants, including Bullock, and requiring that those defendants disclose those assets (the "Asset Freeze and Disclosure Order"). To date, Bullock has not complied with that order.

In November 2013, Gorsoan submitted an *ex parte* application in this district for an order pursuant to § 1782 to obtain documents and testimony from Bullock for use in the Cyprus action.[1] The court granted Gorsoan's application, and later denied Bullock's motion to vacate that order and quash the subpoenas. *See In re Application of Gorsoan Ltd.*, 2014 WL 7232262, at *12. The Second Circuit affirmed. *See Gorsoan Ltd.*, 652 F. App'x at *10.

Nonetheless, Bullock did not produce much, if any, discovery. On February 6, 2018, for instance, Gorsoan suspended a deposition of Bullock "after [she] repeatedly failed to provide good-faith answers to the questions asked and it became clear that she

---

[1] This § 1782 application also sought discovery from RIGroup LLC (of which Bullock is the sole member), Stuart Smith (attorney for Bullock and RIGroup LLC), and Bullock Remmel. *See In re Application of Gorsoan Ltd.*, 2014 WL 7232262, at *2.

was not providing truthful testimony." Dkt. 2 at 3 (Pet.'s § 1782 App.).[2] At the

deposition, Bullock claimed that she did not own any assets exceeding the value of

€10,000. More specifically, she testified that she did not own any property and had no

bank or investment accounts. *See In re Application of Gorsoan Ltd. & Gazprombank*

*Bank OSJC*, No. 17-CV-5912 (RJS), Dkt. 32, Tr. 113:20-117:20 (S.D.N.Y. Apr. 17,

2018) (Transcript of Bullock's Deposition). Rather, she testified that she relied on her

mother and daughters for financial support, although she claimed that she knew nothing

about their financial assets. *See id.* Bullock did, however, acknowledge that trusts, for

which Sundlun was a trustee, had been set up for the benefit of her two daughters. *See id.*

at Dkt. 32, Tr. 188:3-190:13.

In May 2018, Gorsoan raised the issue of Bullock's compliance with Judge

Sullivan. *See id.* at Dkt. 37. Finding it "pretty clear" that Bullock "lied under oath at a

deposition," *id.* at Dkt. 37, Tr. 47:17-23, Judge Sullivan ordered Bullock's deposition to

continue under judicial supervision, *id.* at Dkt 44. At that deposition in August 2018,

Bullock invoked her Fifth Amendment right. *See* Dkt. 3, Ex. B.

## II.    The Instant § 1782 Application

As a result of Bullock's noncompliance with the first § 1782 order, Gorsoan filed

a second *ex parte* application for discovery pursuant to § 1782 on September 13, 2018.[3]

This time Gorsoan sought discovery from Bullock's two daughters, Bullock Remmel and

E. Bullock; Bullock's mother, Kuznetsova; and Sundlun. Dkt. 1. Judge Sullivan granted

Gorsoan's *ex parte* application on October 15, 2018. Dkt. 9. The subpoenas were then

---

[2] Unless otherwise noted, the Opinion cites submissions filed on the docket in this action.

[3] Because Gazprombank has since assigned its claims in the Cyprus action to Gorsoan, Gorsoan filed this second application alone.

served on Respondents, who objected in December 2018. *See* Dkt. 15, Ex. 1, 2. Around

that time, Bullock's counsel notified Gorsoan that Bullock intended to intervene in this

action to request that this discovery order be vacated. Although the parties met and

conferred in early 2019, nothing was filed with the Court, to whom this case was re-

assigned in November 2018, for several months.

On May 13, 2019, Gorsoan filed a letter motion to compel Respondents to comply

with the previously-authorized subpoenas. Respondents filed opposition papers.[4] At this

time, the Court also granted Bullock's request to intervene, Dkt. 22, after which Bullock

filed a motion to vacate the October 2018 order and quash the subpoenas, Dkt. 23. On

November 19, the Court held oral argument on these two motions.

As such, presently before this Court are (1) Gorsoan's motion to compel

discovery pursuant to the October 2018 order, and (2) intervenor Bullock's motion to

vacate that order and quash the subpoenas.

## LEGAL STANDARD

28 U.S.C. § 1782(a) permits a district court to "order [a person] to give his

testimony or statement or to produce a document or other thing for use in a foreign or

international tribunal." A district court has jurisdiction to order discovery upon finding

three statutory requirements satisfied: "(1) the person from whom discovery is sought

resides (or is found) in the district of the district court to which the application is made,

(2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the

---

[4] Respondents filed separate opposition motions. The Opinion refers to Sundlun's opposition brief as "Sundlun Opp.," *see* Dkt. 29, and E. Bullock's, Bullock Remmel's, and Kuznetsova's joint opposition brief as "Bullock et al. Opp.," *see* Dkt. 28. Respondents also "join[] in the arguments that Bullock presents in her brief," which the Opinion refers to as the "Bullock Memo.," *see* Dkt. 29. Sundlun Opp. at 2 n.1; *see also* Bullock et al. Opp. at 1.

application is made by a foreign or international tribunal or any interested person."
*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). The
party seeking discovery bears the burden of proving the statutory requirements. *See*
*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 120 (2d Cir.
2015).

"[O]nce the statutory requirements are met, a district court is free to grant
discovery in its discretion," *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79,
83-84 (2d Cir. 2004), while keeping in mind the statute's "twin aims": "providing
efficient means of assistance to participants in international litigation in our federal courts
and encouraging foreign countries by example to provide such assistance to our courts,"
*Mees v. Buiter*, 793 F.3d 291, 297-98 (2d Cir. 2015). A district court's "discretion,
however, is not boundless." *Schmitz*, 376 F.3d at 84. The Supreme Court has thus
provided four factors to guide this determination: (1) whether "the person from whom
discovery is sought is a participant in the foreign proceeding" and as such the foreign
tribunal could itself order the requested discovery; (2) "the nature of the foreign tribunal,
the character of the proceedings underway abroad, and the receptivity of the foreign . . .
court . . . to U.S. federal-court judicial assistance"; (3) if this request appears to be "an
attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign
country or the United States"; and (4) whether the discovery requests are "unduly
intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241,
264-65 (2004).

## DISCUSSION

Respondents oppose Gorsoan's request that the Court compel them "to produce the documents commanded by the subpoenas [issued on October 15, 2018] and appear for depositions" on several grounds. Pet.'s Mot. to Compel at 1. First, Respondents argue that the court lacks jurisdiction to permit discovery under § 1782 because the statutory requirement that the discovery be "for use in a foreign proceeding" is not met. Second, even if that statutory requirement is satisfied, they argue that the discretionary factors weigh against exercising judicial discretion to grant this discovery. Respondents also contend that the Court cannot compel this discovery because they have each invoked their Fifth Amendment right against self-incrimination. With the exception of asserting the Fifth Amendment, Bullock's motion presents identical arguments. The Court thus addresses these arguments in turn.

## I.      Section 1782's Statutory Requirements

Respondents and Bullock contend that the Court lacks jurisdiction to permit discovery because Gorsoan has failed to establish the second statutory requirement that the discovery be "for use in a foreign proceeding before a foreign . . . tribunal."[5]  28 U.S.C. § 1782(a). They argue that Gorsoan's request for "asset discovery" to determine Bullock's compliance with the Asset Freeze and Disclosure Order is impermissible under § 1782 because it does not serve a purpose for an "adjudicative proceeding" in the Cyprus court. Bullock Memo. at 14-19. Although a difficult question, the Court

---

[5] Bullock and Respondents do not dispute that Gorsoan has satisfied the other two statutory requirements because Respondents reside in this district and Gorsoan is an interested part in the Cyprus litigation. *See Brandi-Dohrn*, 673 F.3d at 80.

concludes that the breadth of the statute's "for use" requirement encompasses the facts presented here.

In determining whether the "for use" statutory requirement is met, the "focus[] [is] on two questions: (1) whether a foreign proceeding is adjudicative in nature; and (2) when there is actually a foreign proceeding." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998).[6] The "for use" requirement must be analyzed "according to the particular facts of each case." *In re Accent Delight Int'l, Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017). The Court, however, need not consider either the "discoverability" or the "admissibility of [the requested] evidence in the foreign proceeding." *Brandi-Dohrn*, 673 F.3d at 82 (italics removed).

The Second Circuit has broadly interpreted the availability of discovery under § 1782. *See In re Accent Delight Int'l Ltd.*, 869 F.3d at 134 ("The availability of Section 1782 discovery . . . is quite broad and only has broadened through successive amendments over the years."); *Brandi-Dohrn*, 673 F.3d at 82 (explaining that Congress "enact[ed] liberalizing amendments to the statute" with no "inten[t] to impose such a sweeping restriction on the district court's discretion"). In doing so, it has read the "for use" requirement to be expansive in nature. As is relevant to the instant motions, the Circuit has emphasized that "an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success." *Mees*, 793

---

[6] In *Intel*, the Supreme Court addressed certain aspects of § 1782's "for use" requirement. It held, in part, that the "for use" requirement only required that a foreign proceeding be "within reasonable contemplation," and therefore need not be either "pending" or "imminent." 542 U.S. at 259. This reversed *Euromepa*'s ruling that, to satisfy the "for use" requirement, a foreign proceeding must, at minimum, be "imminent." 154 F.3d at 27-28; *see also Jiangsu Steamship Co. v. Success Sup. Ltd.*, No. 14-CV-9997 (CM), 2015 WL 3439220, at *6 (S.D.N.Y. Feb. 5, 2015) ("*Intel* did not disturb the Second Circuit's ruling that that any proceeding for which § 1782 discovery is sought must be 'adjudicative' in nature, or its conclusion that an enforcement proceeding is not 'adjudicative.'").

F.3d at 299. Thus, so long as the discovery sought is "something that will be employed with some advantage or serve some use in the proceeding," "an applicant may satisfy the statute's 'for use' requirement even if the discovery [it] seeks is not necessary for [it] to succeed in the foreign proceeding." *Id.* at 295, 298; *see also id.* at 298 (explaining that "[t]he plain meaning of the phrase 'for use in a proceeding' indicates" that discovery might be sought that is "not necessarily something without which the applicant could not prevail"). The "focus[]," therefore, is "on the *practical ability* of an applicant to place a beneficial document – or the information it contains – before a foreign tribunal." *In re Accent Delight Int'l, Ltd.*, 869 F.3d at 131.

Bullock and Respondents rely primarily on the premise that § 1782 broadly "bars discovery in aid of asset identification or collection" because such discovery cannot be adjudicative in nature. Bullock Memo. at 16. In advocating for this general prohibition on asset discovery, they cite *Euromepa S.A. v. R. Esmerian, Inc.*, 154 F.3d 24 (2d Cir. 1998), as well as several subsequent cases in this district, which denied § 1782 applications seeking asset discovery. This Court, however, is not persuaded that *Euromepa* establishes the broad prohibition on asset discovery that Bullock and Respondents urge.

In *Euromepa*, the Second Circuit denied a § 1782 application for discovery to assist with a bankruptcy action in France. *See id.* at 29. Holding that the "for use" requirement was not met, the Circuit reasoned that the foreign proceeding was "not an adjudicative proceeding within the meaning of the statute" because "[t]he merits of the dispute between [the parties] have already been adjudicated and will not be considered in the French Bankruptcy Proceeding." *Id.* at 28. Rather, there, "the already extant

judgment [wa]s merely being enforced." *Id.* Several courts in this district subsequently interpreted *Euromepa* to stand for the proposition that "neither pre-judgment attachment nor post-judgment enforcement proceedings are 'adjudicative' in nature." *Jiangsu Steamship Co.*, 2015 WL 3439220, at *4. They thus denied § 1782 applications seeking discovery to assist solely with obtaining pre- and post-judgment attachments. *See In re MT Baltic Soul*, No. 15-mc-319 (LTS), 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015) (denying an application for discovery that "would only be in relation to a contemplated post-judgment action, which *Euromepa* holds is not a 'foreign proceeding' within the meaning of section 1782"); *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 706-07 (S.D.N.Y. 2015) (denying an application for discovery to assist with obtaining a pre-judgment attachment); *Jiangsu Steamship Co.*, 2015 WL 3439220, at *1 (denying an application for discovery to "locate . . . entities' assets" in New York banks to assist with obtaining a pre-judgment attachment).

Although Respondents and Bullock correctly note that these actions denied asset discovery, in this Court's view, Respondents and Bullock misread – and overextend – those cases' reasoning. None of the decisions established a broad rule that asset discovery can never be adjudicative and is thus always impermissible under § 1782. Instead, each case cited by Respondents and Bullock denied the requested discovery because it would have had no effect on the resolution of the merits in the foreign tribunal. In *Jiangsu*, for example, the court stated: "It is clear from Jiangsu's moving paper that Jiangsu does not need this information in order to prosecute the London arbitration; Jiangsu does not pretend that information about SSL's assets will help prove its breach of contract claim." 2015 WL 3439220, at *1; *see also In re Iraq Telecom Ltd.*, No. 18-mc-

458 (LGS), 2019 WL 3798059, at *3 (S.D.N.Y. Aug. 13, 2019) (describing the denial of the § 1782 application in *Jiangsu* as based on the fact that "the proceeding [was] speculative where petitioner failed to identify a country or tribunal where it intended to file a claim"). Likewise, in *In re Asia Maritime Pacific*, the court noted that "[r]evealingly, Petitioner does not argue that the requested material could be used in the London arbitration to some advantage or 'used to increase its chance of success' in the arbitration." 253 F. Supp. 3d at 706-07. And, in *In re MT Baltic Soul*, the § 1782 application was denied because "Petitioners have not identified with particularity the foreign tribunal(s) in which they would seek to bring their enforcement actions, other than general references to possible proceedings in England and Anguilla." 2015 WL 5824505, at *3.

Accordingly, some courts have since sought to clarify *Euromepa*'s holding. For instance, the court in *In re Stati* explained that *Euromepa* did not hold that all asset discovery was improper under § 1782. No. 15-mc-91509, 2018 WL 474999 (D. Mass. 2018). Rather, it noted that *Euromepa* denied discovery because there was "nothing left to adjudicate" in the foreign tribunal, and as a result, the requested discovery could not have had an effect on the adjudication. *Id.* at *4 ("[T]he *Euromepa* court did not universally bar discovery in all bankruptcy proceedings, particularly where issues are being adjudicated."). Distinguishing the request for asset discovery before it, *In re Stati* clarified that there had been "no prior rulings on the contested issues," in contrast to the facts in *Euromepa*. *Id.*; *see also JSC MCC EuroChem v. Chauhan*, 17-mc-5, 2018 WL 3872197, at *12 (M.D. Tenn. Aug. 15, 2018) (stating that "*Euromepa* had not held 'that all post-judgment proceedings are not adjudicative' and that *Jiangsu* overextended

*Euromepa* in holding that all pre-judgment attachment proceedings are non-adjudicative"). And just a few months ago, another judge in this district cited *Euromepa* for the limited proposition that § 1782 discovery "is inappropriate where the merits of a controversy have already been decided by the foreign tribunal." *In re Galaxy Energy & Res. Co.*, 19-mc-287 (LTS), 2019 WL 2743205, at *1 (S.D.N.Y. July 1, 2019).

The Court agrees with these decisions' reading of *Euromepa*, namely that *Euromepa* denied the § 1782 application based on a particular finding of fact that the discovery requested could not provide "some advantage or serve some use in the proceeding." *Mees*, 793 F.3d at 298. It, therefore, does not lend itself to the broad rule against all asset discovery for which Bullock and Respondents advocate. Moreover, adopting the proposed far-reaching rule against asset discovery would be incongruent with § 1782's "underlying policy" that, "[a]bsent specific directions to the contrary from a foreign forum, . . . district courts [should] provide some form of discovery assistance." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995).

Accordingly, accepting that § 1782 permits asset discovery in circumstances where it will be for use in an adjudicative proceeding, the Court turns to whether the "for use" requirement is met in this particular case. The Court is not persuaded by Bullock's and Respondents' assertion that Gorsoan seeks this discovery only so that it "could one day be used to satisfy a Cyprus judgment." Bullock Memo. at 18. Rather, Gorsoan has demonstrated that it seeks this discovery for other purposes, which have potential implications on the outcome of the case. Thus, for the reasons explained below, this case is factually distinct from those cited where the requested discovery served no adjudicative

purpose. *See In re Accent Delight Int'l, Ltd.*, 869 F.3d at 131 (analyzing the "for use" requirement "according to the particular facts of each case").

First, the Cyprus action remains ongoing and its merits are unresolved. It is thus distinguishable from *Euromepa* where "[t]he merits of the dispute . . . ha[d] already been adjudicated." 154 F.3d at 28.

Second, in contrast to *Jiangsu* and *In re Asia Maritime Pacific*, Gorsoan seeks this discovery for more than "just a collection action." Dkt. 39, Tr. 5:18-19. Although Gorsoan admits that this discovery is "unlikely . . . [to] bear on the fraud itself," *id.* at Tr. 9:18-19, it maintains that the requested discovery could nonetheless affect the outcome of the ongoing adjudication in the Cyprus court. At oral argument, Gorsoan explained that Respondents' financial information would assist in determining the extent to which Bullock has complied (or failed to comply) with the Asset Freeze and Disclosure Order. It further represented that, after obtaining this information, it intends to file a motion for contempt against Bullock in the Cyprus court regarding her "satisfaction of the freezing order abroad."[7] *Id.* at Tr. 3:19-25. This is significant because a finding of contempt in the Cyprus court could have consequences on the case's outcome. As one of the lawyers representing Gorsoan in the Cyprus action has declared, "[u]nder Cyprus law, a party's failure to comply with a court's interim order may lead to various legal consequences which mainly include an entry of an order of contempt, as well in some cases, the entry of an order precluding the relevant party from presenting evidence at the hearing and from otherwise promoting its defence as to the merits of the action." Dkt. 32 at ⁋ 8 (Decl.

---

[7] Gorsoan previously filed a motion for contempt against Bullock in the Cyprus court. Although it withdrew that motion, it "reserved its right to seek contempt measures after the conclusion of the Section 1782 proceeding that was ongoing in the U.S." *Id.* at Tr. 4:12-15.

of Chrysostomos Nicolaou); *see also* Dkt. 39, Tr. 4:24-25, 5:1-3 ("The implication of a contempt finding in Cyprus includes sanctions of preclusion from presenting evidence at the hearing on the merits and from effectively participating in the defense of that merits hearing."). Gorsoan thus insists "that evidence of [Bullock's] concealment of assets would absolutely inform a merits determination in Cyprus because it could prove that she has not complied with the freezing and disclosure order in that court" and then "[Bullock] could be precluded from presenting any evidence on the merits as a sanction." *Id.* at Tr. 5:8-11, 13-14.

Bullock and Respondents do not dispute that Cyprus law permits its courts, upon a finding of contempt, to limit a party's ability to present a defense or even preclude the presentation of any defense. *See id.* at Tr. 15:19-20. Instead, Bullock and Respondents chiefly respond that this still does not satisfy § 1782 because the contempt proceeding is no more than "hypothetical." *Id.* at 10:15-16; *see also id.* at 11:2-5 (referring to the contempt proceeding as "some future hypothetical scenario in which there could be an issue raised by compliance or contempt"); *id.* at 12:21-22 ("[Gorsoan's counsel] speculates hypothetically that one day there might be a contempt proceeding[.]"); 15:14-16 ("They are certainly not moving towards a contempt proceeding of any kind. That's been invented here. It's purely hypothetical.").

But this argument ignores Gorsoan's representations, which the Court has no reason to doubt, that it intends to move for contempt in the Cyprus court at the conclusion of this § 1782 proceeding. *See id.* at Tr. 5:4-5 ("[A] finding of contempt against Ms. Bullock in Cyprus would be driven by the findings of this Court[.]"). "It is not necessary for the adjudicative proceeding to be pending at the time the evidence is sought, but only

13

that the evidence is eventually to be used in such a proceeding." *Certain Funds,*

*Accounts and/or Inv. Vehicles*, 798 F.3d at 123. Gorsoan's contempt motion – and any

ensuing contempt proceedings – are, therefore, "within reasonable contemplation," as is

required by *Intel*, 542 U.S. at 259, and thus still "for use" in a foreign proceeding.

Bullock and Respondents also argue that, even if a contempt proceeding is not

hypothetical, the discovery request is still improper because the information sought will

not directly implicate the case's merits. *See* Dkt. 39, Tr. 12:14-20. They emphasize, for

instance, that the subpoenas order Respondents to produce financial information from a

period after the alleged fraud occurred and urge in any event that this financial

information is "hardly material" or "necessary" for Gorsoan to prove Bullock's

compliance (or lack thereof) with the Asset Freeze and Disclosure Order. *Id.* at Tr.

13:23-24.

In the Court's view, however, Bullock and Respondents misconstrue – and overly

narrow – what a § 1782 applicant must show to satisfy the "for use" requirement. As the

Second Circuit has stated, there is "no reason to believe that Congress intended § 1782 to

provide such parsimonious assistance, permitting discovery only when the applicant

demonstrates [it] cannot do without it." *Mees*, 793 F.3d at 299 ("Notably, § 1782 makes

no mention of necessity."). Instead, "the recipient" of the discovery needs to demonstrate

that it can "take[] some further, independent action to introduce [the discovery]" in the

foreign tribunal, *Certain Funds, Accounts and/or Inv. Vehicles*, 798 F.3d at 121, or has

"the practical ability to inject the requested information into a foreign proceeding," *In re*

*Accent Delight Int'l Ltd.*, 869 F.3d at 132. In other words, establishing that the applicant

will garner "some advantage" by obtaining the requested discovery is sufficient. *Mees,*

793 F.3d at 298. Therefore, while the Court is mindful, as Bullock and Respondents urge, that noncompliance with the Asset Freeze and Disclosure Order might be established through other means, that does not preclude discovery under § 1782. The Court is satisfied with Gorsoan's explanation that it has the ability to introduce the requested information in the Cyprus court and is likely to derive a benefit – with consequences for the entire litigation – from doing so.

On a final note, this Court's conclusion that the "for use" requirement is satisfied here also has support in recent decisions from courts in this district. In *In re Application of BNP Paribas Jersey Trust*, the court determined that the "for use" requirement was satisfied when necessary to determine compliance with a foreign tribunal's "Freezing and Disclosure Order." No. 18-mc-47 (PAC), 2018 WL 895675, at *2 (S.D.N.Y. Feb. 14, 2018). The court reasoned that the requested discovery "bears directly on the ongoing valuation proceedings in the Royal Court as well as on the Freezing and Disclosure Order" and "may show whether additional measures should be taken to restrain [defendant's] assets or whether [defendant] should be held in contempt of the Freezing and Disclosure Order."[8] *Id.* (citing *In re Application of Gorsoan Ltd.*, 2014 WL 7232262, granting Gorsoan's 2013 § 1782 application); *see also Linsen Int'l Ltd. v. Humpuss Sea Transport PTE Ltd.*, No. 09-CV-10393 (GBD), 2011 WL 1795813, at *1 (S.D.N.Y. Apr. 29, 2011) (noting that it "ordered limited discovery" related to a "worldwide freezing injunction in English courts"). Even more recently, in *In re Application of Harry Sargeant*, the court held that discovery sought to assist with an

---

[8] Bullock argues that *In re BNP Paribas Jersey Trust* is distinguishable because there the court was reviewing an *ex parte* application. *See* Bullock Reply Memo. at 5. While true, the court was still required to review § 1782's statutory requirements and ensure that they were satisfied prior to granting the *ex parte* application.

attachment proceeding in Panama satisfied the "for use" requirement, although it ultimately denied discovery on other statutory grounds. 278 F. Supp. 3d 814, 819-22 (S.D.N.Y. 2017). The discovery was for an adjudicatory purpose, the court explained, because it "will be used to 'piec[e] together Ruperti's fraud' and to 'trac[e] Ruperti's assets to aid in the attachment proceeding." *Id.* at 821-22.

The Court thus concludes that Gorsoan has sufficiently established that the discovery it seeks will offer it "some advantage" in the Cyprus court. *Mees*, 793 F.3d at 298. Following this proceeding, a contempt proceeding against Bullock regarding her compliance with the Asset Freeze and Disclosure Order is, at minimum, "within reasonable contemplation." *Intel Corp.*, 542 U.S. at 259. Given that a finding of contempt could limit (or even preclude) Bullock's ability to defend herself on the merits, Gorsoan is justified in seeking the information that could "be employed with some advantage or serve some use [to it] in the [Cyprus] proceeding.'" *Certain Funds, Accounts, and/or Inv. Vehicles*, 798 F.3d at 120. Accordingly, the Court rejects the assertion that the "for use" requirement is not met here and concludes that it has jurisdiction to permit discovery pursuant to § 1782.

## II.    Discretionary Factors

Bullock and Respondents also contend that the Court should deny discovery as a matter of discretion because (1) Gorsoan seeks the discovery in bad faith; (2) Gorsoan is attempting to circumvent the Cyprus court's rules and procedures; and (3) the subpoenas are overly broad and intrusive. "In determining whether to grant [a] motion to quash the subpoenas, this Court must consider the four factors articulated by the Supreme Court in *Intel Corp.*" *In re Application of Gorsoan Ltd.*, 2014 WL 7232262, at *6.

## A. Whether Gorsoan Seeks Discovery in Bad Faith

If an "application under section 1782 is made in bad faith . . . the court is free to deny the application *in toto*." *Euromepa*, 51 F.3d at 1101 n.6. If "[a] request appears only marginally relevant to the foreign proceeding[,] [this] may in certain cases suggest that the application 'is made in bad faith [or] for the purpose of harassment.'" *Mees*, 793 F.3d at 299 n.10.

Respondents and Bullock argue that Gorsoan pursues discovery from Respondents in bad faith because it seeks to obtain discovery for a purpose other than the Cyprus action. For instance, Sundlun alleges that Gorsoan is "acting as the litigation vehicle for a sanctioned Russian bank and in tandem with the Russian government's own efforts to identify Bullock's assets and enforce a criminal judgment against her." Sundlun Opp. at 4; *see also* Bullock Memo. at 21-22 ("Gorsoan has a far more nefarious purpose in seeking extensive, asset-related discovery: to obtain information about Bullock, her family, and her alleged assets that it can then turn over to the Russian Federation to aid in its years-long campaign to seize Bullock's assets and to bolster its politically-driven criminal case against her ex-husband."). Respondents and Bullock, however, have not set forth a sufficient basis for the Court to deny Gorsoan's application on this ground. *Cf. In re RSM Prod. Corp.*, No. 17-mc-213 (DLC), 2018 WL 1229705, at *3 (S.D.N.Y. Mar. 9, 2018) (denying discovery under § 1782 based on a finding that petitioners "are serial litigants in this Court and courts across this country, and have been repeatedly sanctioned for bad faith litigation"). Without adequate support for their allegations of Gorsoan's bad-faith conduct, this Court is in no position to question the propriety of the ongoing litigation in the Cyprus court or related proceedings elsewhere.

*See* Dkt. 26 (Decl. of Vincent Desry); *see also Aguinda v. Texaco, Inc.*, No. 93-CV-7257 (TSR), 94-CV-9266 (TSR), 2000 WL 122143, at *3 (recognizing "the caution and deference a United States court must exercise in approaching a question of the independence and impartiality of a foreign court").

In any event, courts have previously determined that these very allegations are not well suited for review in this forum. In 2012, Bullock filed an action in this district, alleging that three defendants (including Gorsoan) "conspired to loot a Russian corporation owned and controlled by Plaintiffs," which was dismissed on *forum nonconveniens grounds. See RIGrp. LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 549 (S.D.N.Y. 2013). The Second Circuit affirmed, stating that "Russia provides a more-convenient forum" to raise these issues. *RIGrp. LLC v. Trefonisco Mgmt. Ltd.*, 559 F. App'x 58, 58 (2d Cir. 2014). Then, in opposing Gorsoan's § 1782 application in 2013, Bullock again argued that Gorsoan's conduct was in bad faith. As Judge Gardephe noted, "[m]ovants argue that the Cyprus Proceedings and the instant subpoenas 'represent the multi-year, continuing harassment by Russian corporate raiders seeking to steal Ms. Bullock's assets,' and that '[t]hese acts of thievery and continued unlawful acts of harassment should not be condoned . . . by this Court via the grant of discovery . . . in favor of such corporate raiders. . . .'" *In re Application of Gorsoan Ltd.*, 2014 WL 7232262, at *9 n.5 (internal citations omitted). There too, the court refused to engage with Bullock's bad-faith argument, emphasizing the Second Circuit's holding that "a Russian tribunal – and not a U.S. court – is the proper forum for Bullock and RIGroup to litigate the merits of their allegations against the alleged Russian corporate raiders." *Id.*

This Court shares this view that allegations of Gorsoan's bad-faith conduct are best raised in another forum – here, in the Cyprus action.

Accordingly, the allegations of bad faith provide an insufficient basis to deny Gorsoan's discovery request.

## B. Whether Gorsoan Seeks Discovery to Circumvent the Cyprus Court's Procedures and Supervision

Next, Bullock and Respondents argue that Gorsoan's § 1782 application is an attempt to circumvent the supervision and procedures of the Cyprus court because the Cyprus court does not permit "third-party discovery" or "the use of depositions." Bullock Memo. at 23-24; *see also* Sundlun Opp. at 5.

A court should be hesitant to permit discovery under § 1782 if the applicant is attempting to "circumvent foreign proof-gathering restrictions." *Intel Corp.*, 542 U.S. at 265; *see also In re Application of Auto-Guadeloupe Investissement S.A.*, No. 12-mc-221 (RPP), 2012 WL 4841945, at *7 (S.D.N.Y. Oct. 10, 2012) (placing the burden of demonstrating circumvention on the party opposing the application). There is, however, no "foreign-discoverability requirement." *Id.* at 251. That is, a court may order broader discovery under § 1782 than what might be permitted in the foreign tribunal. Circumvention, therefore, will not be found "merely [because] the requested documents are not obtainable through [the foreign tribunal's] procedures." *In re Hansainvest Hanseatische Investment-GmbH*, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018). Rather, a court must also find that the "[a]pplicant [is] engaged in a bad faith endeavor to misuse Section 1782." *Id.*

Bullock and Respondents have not met their burden of demonstrating circumvention here because their contention that Gorsoan is attempting to circumvent the

Cyprus court's procedures and supervision by requesting third-party discovery, particularly depositions, is no longer viable. In *Intel*, the Supreme Court clearly stated that there is no "foreign-discoverability requirement," meaning that a district court need not consider whether a foreign tribunal could grant the applicant's discovery request. 542 U.S. at 253.

A related question that often arises is whether the foreign tribunal would be receptive to this discovery. *See Pinchuk v. Chemstar Prods. LLC*, No. 13-mc-306, 2014 WL 2990416, at *3 (D. Del. June 26, 2014) (finding it important, in analyzing circumvention, whether "the foreign tribunals . . . have also not affirmatively rejected assistance"); *cf. In re Application of Schmitz*, 259 F. Supp. 2d 294, 298 (S.D.N.Y. 2003) ("[T]his Court refuses to 'read extra-statutory barriers to discovery in section 1782,' [but] it is legitimate to take Germany's explicitly stated sovereignty concerns into account."). But this factor has no application here. Despite the now-lengthy § 1782 litigation between Gorsoan and Bullock in this district, the Cyprus court has made no indication that it would reject this assistance.

Finally, this argument has already be rejected. In attempting to quash Gorsoan's § 1782 application in 2013, Bullock argued that Gorsoan "sought to circumvent Cypriot proof-gathering restrictions because it sought deposition testimony that is beyond the scope of discovery authorized under Cyprus law." *Gorsoan Ltd*, 652 F. App'x at 9. The court rejected that argument there, *see In re Application of Gorsoan Ltd.*, 2014 WL 7232262, at *8-9, and the Second Circuit affirmed, *see Gorsoan Ltd.*, 652 F. App'x at 9.

## C. Whether the Subpoena Requests Are Unduly Intrusive or Burdensome

Lastly, Bullock and Respondents argue that the Court should not exercise its discretion to permit discovery because the October 2018 order issued "overly broad, unduly intrusive, and harassing" subpoenas to Respondents. Bullock Memo. at 19. They contest both the breadth of the ordered document production and that it requires disclosure of Respondents' financial information. *See* Bullock Memo. at 20-21; Sundlun Opp. at 4; Bullock et al. Opp. at 2-3.

When reviewing whether the requested discovery is "unduly intrusive or burdensome," *Intel Corp.*, 542 U.S. at 265, courts must "be mindful of U.S. federal discovery procedures under Rules 26 and 45 of the Federal Rules of Civil Procedure," *In re Application of Auto-Guadalupe*, 2012 WL 4841945, at *4. "Whether a subpoena imposes an 'undue burden' depends on such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Koch v. Pechota*, No. 10-CV-9152, 2012 WL 4876784, at *3 (S.D.N.Y. Oct. 12, 2012). However, even if discovery is overly broad, the Second Circuit has held that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order than by simply denying relief outright." *Mees*, 793 F.3d at 302.

Gorsoan argues that the subpoenas are "appropriately tailored" because they seek information regarding "those assets that could trigger Bullock's disclosure obligations under the Freezing and Disclosure Order." Pet.'s Opp. at 16. It emphasizes that the subpoenas only require disclosure of Respondents' assets "exceeding €10,000 in value,"

as "assets" are defined in the Asset Freeze and Disclosure Order. *Id.* Furthermore, Gorsoan insists that the subpoenas are reasonably directed at Respondents after Bullock's February 2018 deposition, in which she claimed to have no assets of her own that would require disclosure and that she relied solely on her daughters and mother for financial support. *See In re Application of Gorsoan Ltd.*, No. 17-CV-5912 (RJS), Dkt. 32, Tr. 113:20-117:20, 188:2-190:13 (S.D.N.Y. Apr. 17, 2018) (claiming to own no property and have no bank accounts or credit cards).

The Court agrees with Gorsoan that, in light of Bullock's deposition testimony, discovery as to what assets Respondents have exceeding the value of €10,000, which were transferred to or from Bullock, is relevant to Bullock's compliance with the Asset Freeze and Disclosure Order. Notably, a court in this district granted a similar discovery request – requiring Bullock to produce "documents 'sufficient to disclose all assets exceeding Euros 10,000 anywhere in the world'" – as part of Gorsoan's first § 1782 application. *In re Application of Gorsoan Ltd.*, 2014 WL 7232262, at *9.

Nonetheless, the Court is persuaded that the subpoenas' current scope is overly broad – at least at this point in time. For instance, the subpoena for E. Bullock requires her to provide "[a]ll documents concerning your expenses and the sources of payment(s) for those expenses, including without limitation, costs in connection with any of your Assets, your education, or your social life" and "concerning charitable causes you support, including events you have attended, not limited to the Viennese Opera Ball of February 2, 2018." Dkt. 3, Ex. F. The subpoena for Bullock Remmel similarly demands production of "[a]ll documents concerning charitable causes you support, including events you have attended and/or donations you have contributed" and "concerning Zaya

food, including without limitation, its financing, fundraising, sources of capital, revenues, expenses, debts, and/or investments." Dkt. 3, Ex. E. Another illustration of the subpoenas' breadth is the demand that Sundlun produce "[a]ll documents concerning Bullock, including without limitation any communications with Bullock." Dkt. 3, Ex. H. Thus, the subpoenas appear to "pursue[] material with little apparent or likely relevance to the subject matter," which is often an indication that a subpoena should be modified. *Kirschner v. Klemons*, No. 99-CV-4828, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005); *see also In re Application of OOO Promnefstroy*, No. 19-mc-99 (RJS), 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009) (explaining that a typical § 1782 discovery request is for "a single document or report, or even those documents relating to a single transaction or event").

In addition, the subpoenas require Respondents to disclose an extensive amount of sensitive financial information. Although the Court believes disclosure of some financial information is relevant to the Asset Freeze and Disclosure Order and thus appropriate, the subpoenas currently require more than what appears necessary. *See Gen. Motors LLC v. Lewis Bros., LLC*, No. 10-CV-725, 2012 WL 3128949, at *8 (W.D.N.Y. July 31, 2012) ("[A] party's financial information can be relevant for discovery purposes if it implicates specific elements of a claim or defense asserted in the dispute."). One example is the order that Bullock Remmel, E. Bullock, and Kuznetsova provide "[a]ll documents concerning federal and local taxes filed by you or your agent(s), including your tax returns." Dkt. 3, Ex. E, F, G. Tax returns are generally considered protected matter, which "[c]ourts have been reluctant to require disclosure of." *Rahman v. Smith &*

*Wollensky Rest. Grp., Inc.*, No. 06-CV-6198, 2007 WL 1521117, at *7 (S.D.N.Y. May 24, 2007).

Still, the Court will not quash the subpoenas on this basis alone.  The Second Circuit has stated that, "to the extent a district court finds that a discovery request is overbroad, before denying the application [the court] should ordinarily consider whether that defect could be cured through a limited granted of discovery." *Mees*, 793 F.3d at 302.  Here, "the defect could be cured" by tailoring discovery more closely to the Asset Freeze and Disclosure Order.  *Id.*  Thus, the Court orders the parties to meet and confer in a good-faith effort to resolve the appropriate breadth of document production in light of this ruling and with the understanding that some amount of discovery is permissible.  The Court will refer this matter to a magistrate judge to review the parties' submissions and determine the permissible scope of document production.

## III.   Respondents' Invocation of their Fifth Amendment Right Against Self-Incrimination

As a final matter, Respondents have asked the Court to deny Gorsoan's motion to compel discovery because they have invoked their Fifth Amendment right against self-incrimination.  *See* Sundlun Opp. at 6-8; Bullock et al. Opp. at 3.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *see Kastigar v. United States*, 406 U.S. 441, 444 (1972) (applying the Fifth Amendment right against self-incrimination in civil proceedings).  Section 1782(a) incorporates this guarantee: "A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."  A person may assert privilege not only when production of an answer or document could support a

conviction but also when it would "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). For a court "[t]o sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486-87.

Although "[t]he Amendment must be accorded liberal construction in favor of the right it was intended to secure," *id.* at 486, there is a limit to its scope. Privilege "must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." *Id.* "A witness's 'sincere belief' that his answers may be incriminating, without more, 'is not enough to foreclose his answering or making a disclosure." *SEC v. Pence*, 323 F.R.D. 179, 187 (S.D.N.Y. 2017). Therefore, each case requires an evaluation of the specific circumstances presented. *See United States v. Edgerton*, 734 F.2d 913, 919 (2d Cir. 1984) ("The court should be guided by its own perceptions of the unique facts of each case.").

Respondents have offered little, if any, explanation as to why they are invoking their Fifth Amendment right. Respondents' initial briefs make only conclusory statements, such as that "the Court should respect the family members' assertion of their Fifth Amendment rights." Bullock et al. Opp. at 3; *see also* Sundlun Opp. at 9. In response to Gorsoan's briefs, Respondents further assert that Gorsoan's admission that it seeks discovery "to determine [Respondents'] involvement in the fraudulent schemes described in Plaintiffs' pleadings" is sufficient for them to invoke the Fifth Amendment. Dkt. 37 at 1 (Respondents' Reply Ltr.). The Court disagrees.

At this stage, however, the Court cannot accept Respondents' argument. Thus far, Respondents have essentially sought a blanket assertion of privilege, failing to point to anything specific – whether it be a document or future question at a deposition – that might implicate them. Asserting one's Fifth Amendment right based on a "blanket claim" is impermissible. *United States v. Clark*, 574 F. Supp. 2d 262, 267 (D. Conn. 2008) ("[A]n individual who wishes to assert his Fifth Amendment right against self-incrimination cannot make a 'blanket claim of privilege.'"); *see also Pence*, 323 F.R.D. at 188 ("A court should not accept a defendant's 'blanket assertion of a fifth amendment privilege,' and must instead 'undertake a particularized inquiry to determine whether the [fifth amendment] assertion was founded on a reasonable fear of prosecution."). Rather, a "witness . . . must endeavor to explain how his answer will be incriminatory," even if it "come[s] dangerously close to doing that which he is trying to avoid." *Edgerton*, 734 F.3d at 919. Without any particularized reasoning, Respondents' fear of incrimination – in either the Cyprus action or in the courts here – remains "remote or speculative," particularly because none of the Respondents are (or have ever been) named in the Cyprus action that has been ongoing for more than seven years. *Estate of Fisher v. C.I.R.*, 905 F.2d 645, 649 (2d Cir. 1990).

The Court, therefore, will not deny Gorsoan's motion to compel on this basis. But this does not prohibit Respondents from invoking their Fifth Amendment right against self-incrimination with regard to a particular document or question at a later stage after the scope of discovery has been modified. *See Pence*, 323 F.R.D. at 187. In addition to determining the permissible scope of discovery, the magistrate judge will address Respondents' claims of privilege.

## CONCLUSION

For the reasons stated above, Gorsoan's motion to compel is granted, and Bullock's motion to vacate the order and quash the subpoenas is denied. The parties are to meet and confer regarding how to modify the subpoenas' scope, and the Court will refer this action to a magistrate judge for review of that submission and Respondents' compliance with the modified subpoenas. The Clerk of Court is respectfully directed to terminate the motions at docket numbers at 15 and 23.

Dated:     January 24, 2020
          New York, New York

RONNIE ABRAMS
United States District Judge