UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re Application of GORSOAN LIMITED    :
for an Order Pursuant to 28 U.S.C. § 1782
to Conduct Discovery for Use in a Foreign    :    **MEMORANDUM AND ORDER**
Proceeding,
                                                                    :    18-MC-431 (RA) (KNF)
                        Petitioner.
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## PROCEDURAL BACKGROUND

On October 15, 2018, the court granted the petitioner's ex parte application for an order pursuant to 28 U.S.C. § 1782 to obtain discovery for use in a proceeding in Cyprus, namely, to serve subpoenas on Zoe Bullock Remmel, Eugenia Bullock, Zoya Kuznetsova and Stuart Sundlun ("the respondents"). Docket Entry No. 9. On May 13, 2019, the petitioner made a motion to compel the respondents to respond to the subpoenas it served on them. See Docket Entry No. 15. On May 31, 2019, a motion by Janna Bullock "to intervene in these proceedings, with consent of all parties," was granted. See Docket Entry No. 22. Thereafter, Janna Bullock made a motion to vacate the October 15, 2018 order and quash the subpoenas. See Docket Entry No. 23.

On January 24, 2020, the assigned district judge: (1) granted the petitioner's motion to compel the respondents to respond to the subpoenas authorized by the October 15, 2018 order; (2) denied a motion by intervenor Janna Bullock to vacate the October 15, 2018 order and quash the subpoenas; (3) directed the parties to meet and confer "regarding how to modify the subpoenas' scope"; and (4) referred the matter to the undersigned "for review of that submission and Respondents' compliance with the modified subpoenas." Docket Entry No. 42. More specifically, the court found that: (1) "[a]lthough a difficult question," the statutory "for use"

1

requirement of Section 1782 was met under the standard set forth in Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d 24, 27 (2d Cir. 1998) ("Euromepa") because the petitioner demonstrated that it seeks discovery for purposes "which have potential implications on the outcome of . . . the ongoing adjudication in the Cyprus court," namely, the respondents' "financial information would assist in determining the extent to which [Jana] Bullock has complied (or failed to comply) with the Asset Freeze and Disclosure Order" and, after the respondents' intended filing of a motion for contempt, "a finding of contempt in the Cyprus court could have consequences on the case's outcome"; (2) "allegations of Gorsoan's bad-faith conduct are best raised in" the Cyprus action; (3) "a district court need not consider whether a foreign tribunal could grant the applicant's discovery request"; (4) the subpoenas' "current scope is overly broad" and they require disclosure of "an extensive amount of sensitive information"; and (5) "[w]ithout any particularized reasoning, respondents' fear of incrimination – in either the Cyprus action or in the courts here remains 'remote or speculative,' particularly because none of the respondents are (or have ever been) named in the Cyprus action that has been ongoing for more than seven years."  Docket Entry No. 42.  On February 21, 2020, the respondents and intervenor Janna Bullock filed notices of appeal from the January 24, 2020 order.  See Docket Entry Nos. 44, 45 and 46.

On April 7, 2020, the petitioner filed an application styled "Gorsoan Limited's Submission Pursuant to January 24, 2020 Order," requesting that the Court: (i) "find that the revised discovery requests as set forth in Gorsoan's February 28, 2020 letters are reasonable"; (ii) "order Respondents' compliance with the subpoenas as modified by the February 28, 2020 letters"; and (iii) "require the production of documents by Respondents within thirty days of such

order." Docket Entry No. 47. The petitioner's application was denied, without prejudice. See Docket Entry No. 52.

Before the Court is the respondents' motion "for an order pursuant to Federal Rule of Appellate Procedure 8 staying further proceedings in this Court pending resolution of Respondents' appeal of this Court's January 24, 2020 Opinion and Order." Docket Entry No. 53. The petitioner opposes the motion.

### RESPONDENTS' CONTENTIONS

The respondents assert that "there is a likelihood of success or at least serious question on the merits" because they are challenging on appeal "both the § 1782 and Fifth Amendment aspects of the Court's decision, and both issues are independently dispositive of this matter."

Concerning Section 1782, the respondents assert on appeal "that the Court erred in finding that the asset discovery that Gorsoan seeks satisfies the statute's 'for use' requirement." Section 1782 is limited to discovery that will aid adjudicative proceedings, requiring a connection between the discovery sought and the merits in the foreign action, but the petitioner conceded, "and the Court found, that the information it seeks here has no bearing on Gorsoan's allegations of fraud between 2005 and 2008, and at most would help Gorsoan monitor [Janna] Bullock's compliance with an asset-freezing order entered in August 2012." The respondents contend that the court's finding that the petitioner satisfied the "for use" requirement "departs from the binding appellate authority under which the 'for use' requirements demands [sic] some 'means of injecting the evidence into the proceeding.'" According to the respondents, more than five years ago, the petitioner secured a federal court determination "that [Janna] Bullock 'ha[d] not complied with her discovery obligations under the [Asset] Freezing and Disclosure order,'" but declined to pursue the issue in Cyprus. The petitioner did not discuss a Cyprus contempt

motion at the time of its original application and, when it raised the possibility of such a motion almost one year later, it declined to represent to the court that it planned to make the motion; thus, a contempt motion was not within reasonable contemplation. Moreover, the court acknowledged that the respondents' "for use" argument presented a "difficult question," which satisfies the "serious question" standard.

Concerning the Fifth Amendment challenge, the respondents assert on appeal "that the Court further erred in rejecting their invocation of the Fifth Amendment act-of-production privilege and holding instead that they had to assert the privilege with respect to 'specific' documents." The respondents maintain that requiring them "to identify specific documents responsive to Gorsoan's subpoenas before claiming the privilege cannot be squared with the fact that the privilege protects against having to disclose the existence and possession of such documents in the first place." The respondents maintain that "the Court held that respondents may assert document-specific Fifth Amendment objections only 'at a later stage *after* the scope of [sic] has been modified,'" but "there is no way to negotiate the scope of the subpoenas here without risking waiver of Respondents' Fifth Amendment rights. Such negotiations would require discussion about what documents may exist, what documents Respondents may hold, and the form in which those documents may be maintained," forcing the respondents "to impliedly if not expressly concede which responsive documents, if any, are in their possession." By the time the respondents identified any documents with the particularity required by the court's decision "there would be nothing left for the Fifth Amendment to protect."

The respondents assert that they would be irreparably harmed because "the Court has ordered that Respondents complete a meet-and-confer process and attempt to fully resolve their dispute relating to Gorsoan's subpoenas by June 30, 2020," which the respondents cannot do

4

without rendering their Fifth Amendment rights illusory.  Furthermore, any information that the petitioner were to obtain while the appeal is pending is information to which the petitioner is not entitled.  Absent a stay, contempt will be the cost to the respondents if they want to protect their Fifth Amendment rights.

The respondents maintain that a stay will not injure the petitioner because the discovery it "seeks is not necessary for the purposes it intended to serve."  The petitioner represented to the court that discovery here will "shore up" a showing that "[Janna] Bullock has not complied with the Cyprus asset-freezing order," but the petitioner "has long represented that [Janna] Bullock has not complied," including in federal court, since 2013.  The petitioner did not show urgency in pursuing discovery through this proceeding, as it waited five months from receipt of the respondents' written objections to the subpoenas to file a motion to compel, nearly three months from the court's decision to file its April 7, 2020 motion to compel and two more months to file its response to the respondents' April 9, 2020 letter.  Recently, the petitioner sought the maximum number of days—91—to submit its opposition to the respondents' brief to the Second Circuit Court of Appeals.  The respondents assert that the public interest does not favor the petitioner because the public "lacks an interest in facilitating an asset-freezing effort undertaken in conjunction with a Russian Bank subject to sanctions in the United States" and "there is no societal preference that denying a stay would further."

In support of their motion, the respondents submitted their counsel's declaration with the respondents' and intervenor's briefs on appeal.  The respondents raise the following issues on appeal: (1) "whether § 1782 may be used to identify assets subject to a prejudgment asset-freezing and disclosure order when identification of those assets does not relate to the merits being adjudicated in the foreign proceeding"; (2) "whether Gorsoan satisfied § 1782's

requirement that discovery be 'for use' in adjudicative proceedings either pending or 'within reasonable contemplation' by describing a hypothetical contempt motion it has had years to advance and did not even hint at until ten months after filing its § 1782 application"; (3) "whether the district court abused its discretion when it committed multiple errors of law and failed to address arguments the Supreme Court has directed courts to consider in deciding whether to grant discovery under§ 1782"; and (4) "whether the district court erred in holding that the recipient of a subpoena must identify 'specific' documents before invoking the Fifth Amendment act-of-production privilege in response to broadly worded requests." Docket Entry No. 55-1.

## PETITIONER'S CONTENTIONS

The petitioner asserts that the respondents' motion "is five months too late" and their "lack of alacrity in seeking a stay—despite Gorsoan's repeated reminders that a stay was required if Respondents would not comply with the Order—mandates that Respondents' motion should be denied." According to the petitioner, the respondents "took the position that no stay was required because of the purported reason that their appeal somehow made the Order enforceable." The respondents failed to address their delay in making the motion to stay, which is fatal to their request for a stay and, in addition to the Court's rejection of the "belated argument in their June 16, 2020 reply letter as untimely," the respondents "cannot now plausibly maintain their irreparable harm argument given their extreme delay in seeking a stay." The petitioner argues that the respondents' inexcusable delay severely undermines their claimed irreparable harm because they were on notice through opposing counsel, since at least April 2020, but chose not to seek a stay and only made the instant motion after the Court rejected their belated request as untimely. The respondents' Fifth Amendment rights they now assert they do

6

not want to waive "were present in January 2020," but the respondents did not act to protect them timely. Thus, the respondents' "extreme and unjustified delay alone counsels against a stay."

The petitioner contends that the respondents have not established a likelihood of success on appeal because, when it determined that the petitioner satisfied the "for use" requirement, the court analyzed carefully the existing precedents, including the respondents' argument that Euromepa precluded the discovery sought by the petitioner, which remains central to their appeal. While the respondents disagree with the court's conclusion, "they do not demonstrate likelihood of success on appeal simply by re-hashing the same arguments that failed to win the day the first time around." According to the petitioner, the respondents could not assert a blanket Fifth Amendment protection to shield any production of documents, and they failed to offer any rationale for their claimed risk of incrimination, apart from conclusory statements, such as "the Court should respect the family members' assertion of their Fifth Amendment rights."

The petitioner asserts it will suffer irreparable injury if a stay is issued because it sought this discovery during the course of a long and protracted Section 1782 proceeding in which Janna Bullock is the respondent. The petitioner's initial application in the Janna Bullock action was allowed in December 2013, but the matter continues given Janna Bullock's contempt for the proceedings and general recalcitrance. The petitioner only sought recovery when Janna Bullock indicated that the respondents had responsive information; thus, if a stay is issued, the petitioner is left unable to adduce the discovery to which it is entitled. The petitioner maintains that, "with each day that passes, Gorsoan risks that it will receive the discovery to which it is entitled too late for it to be of use in the proceeding in Cyprus."

According to the petitioner, public interest in comity between United States and foreign tribunals will be adversely affected if a stay is issued. The respondents' unreasonable and unjustified delay in seeking a stay of the order should not frustrate the comity goals inherent in Section 1782, and the respondents should not be allowed to point to the Fifth Amendment as weighing in the public interest given their own conduct in waiting too long to seek the relief they now request.

**RESPONDENTS' REPLY**

The respondents assert that the petitioner's principal response to their motion "concerns the second stay factor: whether the movant will be irreparably injured absent a stay." However, the petitioner ignores all the irreparable harm arguments in the motion brief, including that an alleged constitutional violation constitutes irreparable harm. The respondents acknowledge that delay in seeking a stay may bear on a claim of irreparable harm, but assert "that is because there may be tension between allowing proceedings to continue, on the one hand, and later claiming that continued proceedings are irreparably harmful, on the other," as demonstrated in the cases on which the petitioner relies. In this case, by contrast, the respondents "have always taken the position that district court proceedings should not continue during the pendency of their appeal, and they have in no way acquiesced in a particular harm that they now identify as irreparable," notwithstanding that their argument focused on the jurisdictional issue. Moreover, the respondents informed the petitioner of their intent to appeal before they filed the notice of appeal and explained their understanding that no further proceedings would take place in this court, but the petitioner did not take action until April 7, 2020, and the respondents responded two days later. After the Court directed the parties to meet and confer, the respondents acted diligently to protect their rights and reached out to the petitioner to ask whether it would consent to a stay or

adjournment of the meet-and-confer deadline pending a motion to stay. The respondents contend that the Court declined to consider their stay argument raised for the first time in reply based on the concern that the moving party had no opportunity to address the argument. That concern does not apply here where the petitioner had a full opportunity to address the issue.

The respondents assert that the petitioner ignored most of the considerations relevant to the remaining factors and argued that the respondents' arguments about likelihood of success on the merits should not be considered. According to the respondents, the petitioner confuses reconsideration and motion to stay standards and ignores the Fifth Amendment issue. Given that the petitioner seeks discovery concerning assets that allegedly derive from the proceeds of fraud against a Russian bank, "[i]t takes little imagination to understand why possession of such documents might be incriminating." The district court held that the respondents could invoke the Fifth Amendment as to a "particular document . . . at a later stage after the scope of discovery has been modified," and the Second Circuit will decide whether the court erred in requiring invocation on a document-by-document basis, which the petitioner does not address.

With respect to the injury to the petitioner, the petitioner argues that "it will be deprived of an opportunity to seek an order of contempt against [Jana] Bullock relating to the Cyprus asset-freezing order," but that argument "cannot be squared with the record" because the petitioner "has maintained for years that [Janna] Bullock has not complied with her obligations under the asset-freezing order," starting in 2013. Thus, the petitioner does not need discovery in this action to pursue contempt in Cyprus. Given the lack of urgency and the petitioner's decision to seek the maximum amount of time for its brief to the Second Circuit, no basis exists to find that the petitioner would be "substantially" injured by a stay.

The respondents contend that the petitioner does not deny that the public has an interest in ensuring the protection of constitutional rights pending litigation over the scope of those rights, but insists that the respondents are not "entitled" to press that argument because their conduct defeats the public interest in the application of the Fifth Amendment. However, the respondents have been diligent about protecting their Fifth Amendment rights throughout this proceeding, including their objections to the subpoenas at issue and their briefs on the petitioner's motion to compel. The respondents maintain that no reason exists why general comity goals should trump concerns about facilitating asset-discovery for the benefit of a sanctioned Russian bank, when the constitutional rights of United States citizens are at stake.

## LEGAL STANDARD

> A party must ordinarily move first in the district court for the following relief: (A) a stay of the judgment or order of a district court pending appeal; (B) approval of a bond or other security provided to obtain a stay of judgment; or (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending.
>
> Fed. R. App. P. 8(a)(1).

In exercising discretion when determining a motion to stay a district court order pending an appeal, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 434, 129 S. Ct. 1749, 1761 (2009) (citation omitted).

> *Nken* provides a four factor standard for granting a stay pending appeal, which the Court recognized as overlapping substantially with the preliminary injunction standard. 129 S.Ct. at 1761. Although the Court repeated the "likely to succeed on the merits" phrasing, it did not suggest that this factor requires a showing that the movant is "more likely than not" to succeed on the merits.

>Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 37 (2d Cir. 2010).

"The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[ ] will suffer absent the stay. Simply stated, more of one excuses less of the other." Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir. 2002) (citation omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Nken. 556 U.S. at 433-34, 129 S. Ct. at 1761.

## APPLICATION OF LEGAL STANDARD

*Strong Showing of Likelihood to Succeed on the Merits*

In their motion, the respondents focus on the likelihood of success of two out of their four arguments on appeal, namely, that the court erred in finding that: (i) the statutory "for use" requirement was satisfied; and (ii) the respondents had to assert the Fifth Amendment act-of-production privilege with respect to "specific" documents.

The respondents are correct that the court acknowledged in its January 24, 2020 opinion and order that the "for use" issue presented a "difficult question" and analyzed competing interpretations of the Second Circuit's decision in Euromepa, concluding that the respondents "misread – and overextended" reasoning of the cases in which courts denied "§ 1782 applications seeking discovery to assist solely with obtaining pre- and post-judgment attachments" based on the respondents' interpreting "*Euromepa* to stand for the proposition that 'neither pre-judgment attachment not post-judgment enforcement proceedings are 'adjudicative' in nature.'" The court explained in its January 24, 2020 opinion and order that "[n]one of the decisions established a broad rule that asset discovery can never be adjudicative and is thus always impermissible under § 1782" and noted that "some courts have since sought to clarify *Euromepa*'s holding." The petitioner asserts, without citation to any authority, that the

11

respondents "do not demonstrate likelihood of success on appeal simply by re-hashing the same arguments that failed to win the day the first time around." The petitioner appears to suggest, without any support in law or rules, that the respondents were required to make additional arguments on appeal that they did not make before the district court. In the circumstance of this case and in light of: (a) competing interpretations of Euromepa and the need for clarification of Euromepa's holding, noted explicitly by the court in its January 24, 2020 opinion and order; (b) the fact that the court was persuaded by certain courts' reasoning rather than certain other courts' reasoning; and (c) the strength of the respondents' "for use" arguments on appeal, the Court finds that the respondents made a strong showing of likelihood to succeed on the merits of their appeal in connection with their "for use" argument.

The petitioner asserts that the respondents "continue to argue" what they argued before the district court, namely, "that any document production is protected under the act-of-production privilege" but they "have still failed to offer any rationale for their claimed risk of incrimination, and thus their Fifth Amendment argument fails to satisfy even the basic prerequisite for success." The petitioner does not make citation to any authority requiring the respondents "to offer any rationale for their claimed risk of incrimination" on appeal from the January 24, 2020 order to satisfy the strong showing of likelihood of success for the purpose of the instant motion to stay. The respondents argue on appeal that the court erred in deferring a particularized consideration of their Fifth Amendment rights until after the scope of the subpoenas is narrowed, relying on binding precedents in support of their argument, and asserting that the risk of waiving the privilege is heightened when the subpoenas, such as in this case, are broad. In the circumstance of this case where: (i) the court found that the subpoenas were too broad and directed that the scope of the subpoenas be narrowed; and (ii) the respondents'

challenge to the scope of the Fifth Amendment privilege, as determined by the January 24, 2020 opinion and order, is based on binding precedents, the Court finds that the respondents made a strong showing of likelihood to succeed on the merits of their appeal in connection with the scope of their Fifth Amendment rights. The Court finds that the likelihood of success on the merits factor militates in favor of a stay.

*Irreparable Injury Absent a Stay*

The respondents assert that they will suffer irreparable harm if the stay is not issued because they cannot complete a meet-and-confer process and attempt to resolve the dispute without rendering their Fifth Amendment rights illusory, since any information that is produced to the petitioner pending appeal cannot be undone; thus, absent a stay, "contempt will be the cost to Respondents if they want to protect their Fifth Amendment rights." The petitioner asserts that inexcusable delay in making the instant motion undermines the respondents' claim of irreparable harm.

In this circuit, "the alleged violation of a constitutional right triggers a finding of irreparable injury." Conn. Dep't of Envtl. Prot. v. O.S.H.A., 356 F.3d 226, 231 (2d Cir. 2004) (citation omitted); see Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984) ("'When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.' 11 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2948, at 440 (1973)").

The petitioner is correct that the respondents: (1) waited from January 24 to June 20, 2020, to make the instant motion; and (2) failed to provide any explanation justifying the delay in making the motion. The petitioner relies on the Second Circuit's guidance that "[a] district court should generally consider delay in assessing irreparable harm." Tom Doherty Assocs., Inc.

13

v. Saban Ent., Inc., 60 F.3d 27, 39 (2d Cir. 1995).  However, Tom Doherty Assocs., Inc. did not involve an allegation of constitutional violation; rather, it involved a mandatory preliminary injunction where a book publisher's potential prospective loss of goodwill established irreparable harm, and the court found that the book publisher's delay in seeking to enforce its contractual rights did not negate showing of irreparable harm.  Id. at 39-40.

Here, the respondents asserted their Fifth Amendment rights, and they challenge on appeal the scope of the Fifth Amendment rights determined by the court's January 24, 2020 opinion and order.  If the Second Circuit agrees with the respondents, the respondents' Fifth Amendment rights may be violated absent a stay of the January 24, 2020 order pending appeal.  The respondents' assertion of a potential Fifth Amendment violation triggers a finding of irreparable harm.  See Conn. Dep't of Envtl. Prot., 356 F.3d at 231.  The petitioner makes no citation to any binding authority for its proposition that the respondents' "extreme and unjustified delay alone counsels against a stay" in the circumstance, such as this one, where the potential of a constitutional violation is alleged.  The Court finds that the irreparable harm factor militates in favor of a stay.

***Substantial Injury to the Other Parties Interested in the Proceeding***

The petitioner asserts that it will suffer substantial injury if a stay is issued because, "with each day that passes, Gorsoan risks that it will receive the discovery to which it is entitled too late for it to be of use in the proceeding in Cyprus."  The petitioner's conclusory assertion that it will suffer substantial injury if a stay is issued because the risk of receiving discovery to which it is "entitled" increases with each passing day is undermined by the record, demonstrating that: (1) as the court noted in its January 24, 2020 opinion and order, the petitioner "admits that this discovery is 'unlikely . . . [to] bear on the fraud itself,'" although it could "affect the outcome of

14

the ongoing adjudication in the Cyprus court"; (2) the petitioner has maintained, since 2013, that Janna Bullock failed to comply with the asset-freeze order in the Cyprus action and could have pursued contempt proceedings in Cyprus without the need of discovery in this action; (3) the petitioner waited from December 17, 2018, when the respondents' objections to the subpoenas were made, to May 13, 2019, to file a motion to compel; (4) the petitioner waited from the January 24, 2020 opinion and order until April 7, 2020, to file its letter-application; (5) the petitioner waited until June 16, 2020 to file its reply to the respondents' April 9, 2020 opposition letter; and (6) the petitioner requested 91, the maximum number of days to file its brief in the Second Circuit. The record establishes that the petitioner was in no rush, until now, to expedite this action by acting timely and diligently. Accordingly, the petitioner's assertion that it will suffer substantial injury because, "with each day that passes, Gorsoan risks that it will receive the discovery to which it is entitled too late for it to be of use in the proceeding in Cyprus," is rejected as meritless. The Court finds that the substantial injury to the other party interested in the proceeding factor militates in favor of a stay.

*Public Interest*

The respondents assert that the public has an interest "in ensuring the protection of constitutional rights pending litigation over the scope of those rights" and "preserving judicial resources." The petitioner asserts that the public interest in comity between United States and foreign tribunals weighs against a stay. As discussed above, absent a stay pending appeal, the respondents' Fifth Amendment rights may be violated. The Court finds that the public interest in: (i) protecting constitutional rights of United States citizens pending litigation over the scope of those rights; and (ii) preserving judicial resources by avoiding unnecessary proceedings while the appeal in this action is pending, outweighs the general interest in comity between United

States and foreign tribunals. Thus, the Court finds that the public interest factor militates in favor of a stay.

## CONCLUSION

For the foregoing reasons, the Court finds that a stay of further proceedings in this action, pending resolution of the respondents' appeal from the January 24, 2020 opinion and order, is warranted. The respondents' motion for a stay, Docket Entry No. 53, is granted.

Dated: New York, New York
      July 21, 2020                                 SO ORDERED:

                                                       *Kevin Nathaniel Fox*
                                                     KEVIN NATHANIEL FOX
                                                     UNITED STATES MAGISTRATE JUDGE